**Edward A. BREIDENBACH and Mary Ellen Breidenbach, Plaintiffs.**

v.

**Don BOLISH, Sheriff of Logan County, Nicola Gesi, Drug Enforcement Agency Special Agent, Logan County, a county of the State of Colorado, and John Doe I Through X, officers and agents of various governmental entities including the Colorado National Guard, Defendants.[1]**

Civil Action No. 95–K–2148.

United States District Court, D. Colorado.

June 3, 1998.

---

1. .The list of Defendants in Plaintiffs' Second Amended Complaint initially included the City of Sterling. The City was dismissed from the suit on Plaintiffs' motion on February 26, 1998.

David J. Dansky, Nathan Chambers, Chambers, Dansky and Hansen, P.C., Denver, CO, for Plaintiffs.

Theodore S. Halaby, Halaby, Cross, Liechty & Schulter, Denver, CO, for Defendants Don Bolish, Ray Neville, Logan County and City of Sterling.

William G. Pharo, Assistant U.S. Attorney, Denver, CO, for Defendant Nicola Gesi.

## ORDER ON MOTION TO DISMISS OR STRIKE SECOND AMENDED COMPLAINT

KANE, Senior District Judge.

This civil rights action arises out of a series of pre-dawn raids on the homes of Plaintiffs and certain other landowners in rural Logan County, Colorado. The raids were conducted by federal, state and local law enforcement agents on August 21 and 22, 1993, pursuant to separate search warrants. No marijuana or other contraband was found and no criminal charges were brought against Plaintiffs. Defendant Nicola Gesi, a federal agent with the Drug Enforcement Agency, moves to dismiss Plaintiffs' claims against him or, in the alternative, to strike Plaintiffs' Second Amended Complaint. I grant the motion to dismiss and deny the alternative motion.

### I. FACTS AND PROCEDURAL HISTORY.

Plaintiffs originally filed suit with the other landowners, alleging the searches violated their Fourth, Fifth and Fourteenth Amendment rights under the United States Constitution. Among other things, these plaintiffs asserted Bivens claims against DEA Agent Gesi based on allegations that he knowingly, or with reckless disregard for the truth, included false information in the affidavit used to obtain the search warrants. *See* Am. Compl. at ¶ 23; *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)(describing standard for determining constitutional violation related to submission of false information in a warrant affidavit).

Agent Gesi moved to dismiss plaintiffs' claims on grounds of qualified immunity, arguing their factual allegations were insufficient to support an inference that he acted unreasonably under *Franks*.

I denied Gesi's motion. Plaintiffs had been unable to access Gesi's affidavit because it had been sealed by the issuing judge as part of the continuing criminal investigation in Logan County. Without it, they were unable to allege any specific facts regarding the falsity of Gesi's statements and could not overcome his defense of qualified immunity. In order for plaintiffs to have had any meaningful opportunity to respond to the immunity issue, I determined they were entitled to limited discovery so they might attempt to obtain the affidavit. Order, No. 95–K–2148, slip op. at p. 3 (May 6, 1996). Gesi appealed, and in a published decision dated October 10, 1997, a panel of the Tenth Circuit Court of Appeals reversed. *Breidenbach v. Bolish*, 126 F.3d 1288 (10th Cir.1997). While "sympathetic" to the " 'Catch–22' situation" created by plaintiffs' attempt to allege a constitutional violation based on an affidavit to which they had no access, the Court concluded the defense of qualified immunity shielded Gesi from all discovery, including of the affidavit, in the absence of specific factual allegations establishing a constitutional violation. *Id.* at 1293–94. The Court noted plaintiffs had failed to seek the unsealing of the affidavit from the judge presiding over the criminal case, and stated plaintiffs should have sought to obtain the facts by means other than filing a civil complaint. *Id.* at 1294.

Accordingly, the Court remanded the case to me with instructions to dismiss the amended complaint, but to do so without prejudice and with leave to amend. *Id.* "Such disposition," the Court concluded, "should provide the plaintiffs a reasonable amount of time to obtain the necessary factual allegations, if such exist, to support their Franks claim against Agent Gesi." *Id.*

Pursuant to these instructions, I dismissed plaintiffs' Amended Complaint without prejudice, granting plaintiffs 60 days in which to "investigate their Franks claim against Agent Gesi and to file an amended complaint." Order, No. 95–K–2148 (Dec. 9, 1997). Plaintiffs eventually secured access to the affidavit,[2] and on February 13, 1998,

---

2. After the Tenth Circuit issued its opinion above, Plaintiffs sought an order from Magistrate Judge Borchers in a related criminal action (Case Number 93–CR–1480M, pending before Chief Judge Matsch) to unseal the affidavit. In an Order issued in March 1998, the Magistrate Judge declined to rule on the motion to unseal, and instead ordered the government to provide the affidavit to me for in camera review. Neither the government nor the Plaintiffs produced the affidavit to me as ordered, and I received a copy only after specifically requesting one.

Edward A. Breidenbach and Mary Ellen Breidenbach [3] filed their Second Amended Complaint and Jury Demand ("Complaint"). The new Complaint still names Gesi as a Defendant, but the Franks claim has been abandoned. Rather than assert Gesi deliberately included false information in the warrant affidavit, Plaintiffs' theory of relief is now premised on the affidavit's failure to establish probable cause for the search of their homes. (Compl. ¶ 10.) Plaintiffs reassert allegations that Gesi caused unreasonable force to be used during the execution of the search warrant (Compl. ¶¶ 14–27) and that he conspired with state and local officials to subject them to an unreasonable search (Compl. ¶ 34).

The case is before me on Gesi's Motion to Dismiss and Strike Plaintiffs' renewed claims against him.

## II. *DISCUSSION.*

Gesi's initial argument is that Plaintiffs' claims and the February 1998 Complaint should be stricken because they are beyond the scope of the single Franks claim authorized by the Tenth Circuit on remand. In the alternative, Gesi reasserts the defense of qualified immunity and argues Plaintiffs' "new" non-Franks causes of action should be dismissed on those grounds as well.

I address Gesi's first argument only briefly. The Tenth Circuit's directive on remand was limited to Plaintiffs' Franks claim because that was the claim to which Gesi's initial Motion to Dismiss, and therefore the appeal, was directed. In reversing my denial of Gesi's Motion, the Tenth Circuit did not specifically address the issue of plaintiffs' rights under Fed.R.Civ.P. Rule 15 to amend their complaint, and certainly did not limit those rights as Gesi suggests. Further, the claims of lack of probable cause and excessive force asserted in Plaintiffs' subsequent

Complaint are hardly "new." Allegations of both appeared in the original and first amended complaints. The Tenth Circuit specifically addressed the probable cause issue in its opinion directing remand. *See Breidenbach,* 126 F.3d at 1293.

Although Gesi is correct when he asserts that district courts "need not allow [themselves] to be imposed upon by the presentation of theories seriatim," *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994), it is also clear that the decision of whether to be so rests soundly in their discretion. *See id.* Given the unavailability of the warrant affidavit and the "Catch 22" situation in which Plaintiffs' found themselves in their initial round of pleadings, I decline now that Plaintiffs have seen the affidavit to strike their "new" theories of relief on the grounds urged by Gesi. This is not a situation in which Plaintiffs are abusing the process or sitting on their claims. I will therefore consider Gesi's Motion on its merits.

I begin by reiterating the pleading standard Plaintiffs must meet to overcome a defense of qualified immunity raised in a motion to dismiss. Once a government official raises the defense of qualified immunity, plaintiff must "come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that law was clearly established when the violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 646 (10th Cir.1988), *applied in Breidenbach,* 126 F.3d at 1291. If plaintiff clears these hurdles, the defendant, as the movant on a motion to dismiss, assumes the normal burden of establishing that plaintiff's allegations, taken as true, nevertheless fail to create an inference that he acted unreasonably in light of the law as it existed at the time of his actions. *See Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991)(addressing burden in the context of summary judgment motion).[4]

---

**3.** The other landowners named in the previous complaints did not join the Breidenbachs in the Second Amended Complaint.

**4.** I find the latter point somewhat obscured by the Tenth Circuit's opinion above, which suggests that the "heightened pleading" standard in qualified immunity cases requires the plaintiff not only to plead facts showing defendant violated a clearly established right, but also to plead facts demonstrating as a separate matter the

objective unreasonability of the defendant's acts. *Breidenbach,* 126 F.3d at 1292. This inverts the normal burdens the proponent of a dispositive motion has in a given case and is contrary to the Tenth Circuit's previous elucidations of the qualified immunity standard. In *Pueblo Neighborhood Health Ctrs.,* for example, the Tenth Circuit explicitly distinguished between the plaintiff's burden of identifying the established law and coming forward with sufficient allegations or facts to show defendant violated that law, and

A. *Fourth Amendment Violation Based on Lack of Probable Cause to Search.*

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

For a valid warrant to issue, it must appear from the affidavits supporting the application for the warrant that "there is probable cause to believe that an offense has been committed and that the defendant has committed it...." Fed.R.Crim.P. 4; *Salmon,* 948 F.2d at 1131 (citing *Wong Sun v. United States,* 371 U.S. 471, 481 n. 9, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

■ Government officials are not automatically immune from civil liability for their conduct in obtaining search warrants. In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the United States Supreme Court held that officials may face liability for obtaining a warrant not supported by probable cause when the application for the warrant "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 344–45, 106 S.Ct. 1092 (citing *United States v. Leon,* 468 U.S. 897, 922–23 & 922 n. 23, 104 S.Ct.

3405, 82 L.Ed.2d 677 (1984)); *applied in Salmon,* 948 F.2d at 1136. This standard applies regardless of whether the warrant at issue was an arrest warrant or a search warrant. *Id.* 475 U.S. at 344 n. 6, 106 S.Ct. 1092. Under this standard. Agent Gesi will be immune from suit based on his conduct in obtaining the search warrant unless, on an objective basis, it is obvious that no reasonably competent law enforcement officer would have concluded that a warrant should issue. *Malley,* 475 U.S. at 341, 106 S.Ct. 1092.

■ The Tenth Circuit in *Roberts v. Kling,* 144 F.3d 710 (10th Cir.1998), recently rejected an argument that the question of whether a defendant acted as a "reasonably competent law enforcement officer" is automatically one for the jury. To the contrary, where the question is part of the threshold determination of whether defendant has violated clearly established law, it is for the court to " 'evaluate the totality of the circumstances to determine, as a matter of law, whether the plaintiff has stated sufficient facts to show the defendant[ ] violated ... [plaintiff's] constitutional rights.' " *Id.* at 712 (quoting *Lawmaster v. Ward.* 125 F.3d 1341, 1349 (10th Cir.1997)).

■ Plaintiffs Edward A. and Mary Ellen Breidenbach are in their sixties. They are members of an extended family including Edward's brothers Frank and Stephen, their

the defendant's burden thereafter to prevail on his motion to dismiss or for summary judgment:

Once the defense has been raised, the court must allow the plaintiff the limited opportunity allowed in Fed.R.Civ.P. 12(b)(6) and 56 to come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred. [Citation omitted.] Unless such a showing is made, the defendant prevails. *If the plaintiff has identified the clearly established law and the conduct that violated the law, the defendant as the movant in a motion [to dismiss or] for summary judgment bears the normal burden of showing that no material issues of fact remain that would defeat his or her claim of qualified immunity.*

*Pueblo.* 847 F.2d at 646 (emphasis added), *accord Salmon v. Schwarz,* 948 F.2d at 1136. The distinction flows not only from a movant's burden under Rules 12 and 56, but also from the fact that conduct violative of "clearly established"

law is presumptively unreasonable given the objective nature of that standard itself.

According to the Supreme Court, the contours of a "clearly established" right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, by meeting his initial burdens under the *Harlow* test, plaintiff has already established that defendant has acted unreasonably under a Rule 12 or 56 standard. At that point, defendant assumes the normal burdens of any movant and may prevail only under " 'extraordinary circumstances' " and only if he " 'can prove that he neither knew nor should have known of the relevant legal standard.' " *Snell v. Tunnell,* 920 F.2d 673. 696 (10th Cir.1990)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) and citing *Pueblo* ), *applied in Malik v. Arapahoe County Dep't of Social Serv.,* 987 F.Supp. 868, 873 (D.Colo.1997).

children and respective spouses, and various employees, who live on and around rural Logan County property owned by individual family members and the Breidenbach Brothers. Inc. corporation. Members of the Breidenbach family, including Edward A. Breidenbach and his sons Edward L. and Doug Breidenbach, have been the subject of a lengthy criminal investigation related to the alleged cultivation of marijuana in fields owned by Breidenbach Brothers, Inc., and its distribution in Colorado and elsewhere in the United States. The twelve residences that were the subject of the search warrant included these fields and numerous buildings, trailers, barns and other structures located in and around them, including Plaintiffs' residence. According to the affidavit, firearms, records and logs, bills, receipts, photographs, address books, computer systems, corporate records, deposit and withdrawal slips, as well as grow lights and other indicia of a marijuana cultivation could be found at any or all of the twelve residences.

Plaintiffs acknowledge the affidavit establishes probable cause to search the properties of some members of the Breidenbach family, but contend it "does not come close to establishing probable cause to search [their] property." I have reviewed the affidavit and disagree.

■ The mere fact that an affidavit does not contain personal knowledge of illegal activity at the residence is not fatal to the determination of probable cause. *United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 874 (10th Cir.1992) (citations omitted). Where an affidavit describes circumstances which would justify a person of reasonable caution to believe that the articles sought would be at the plaintiff's residence, then a sufficient nexus exists. *Id.* (citations omitted).

The 54 page warrant affidavit signed by Gesi describes a large scale marijuana cultivation and distribution organization "headed by" Edward A. Breidenbach's brother, Frank. The factual allegations, which include large-scale cultivation of marijuana, intra- and interstate distribution of marijuana and even the murder of an informant, are detailed and go as far back as 1980. In 1985, 250 pounds of marijuana was seized from a field farmed by one of Edward A.'s nephews,

Jack Anthony Breidenbach. In 1992, 129 marijuana plants were seized from plots farmed by various Breidenbach family members and the Breidenbach Brothers business, as well as the home of Edward A.'s nephew, Stephen Jr. In June and July 1993, approximately 3,000 sinsemilla marijuana plants were discovered on property leased by Frank Breidenbach. Edward A.'s son. Doug, is alleged to have grown marijuana in the fields behind his home. Several independent sources are cited as providing the factual basis for other allegations.

Plaintiffs' residence is the eighth location described in the affidavit as a subject for search. Allegations supporting the search of Plaintiffs' residence include the fact that it is the first visible from County Road 50 at the entrance of the Breidenbach property; it shares the same driveway and address as that of organization "head" Frank Breidenbach; and it is the location of a barn and other structures described elsewhere as having been used to dry and store marijuana. The affidavit also avers that farm equipment used by the younger Breidenbachs and others to cultivate marijuana was stored at Plaintiffs' residence, and describes Edward A. Breidenbach has having knowledge of at least one specific indoor marijuana grow operation on the Breidenbach Brothers property. Other allegations specific to Edward A. Breidenbach include the presence of "volunteer" marijuana plants growing on leased property farmed by him and his sons Edward L. and Doug.

Based on the foregoing, it cannot be said that the warrant affidavit "is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Malley v. Briggs,* 475 U.S. at 335, 106 S.Ct. 1092. At the time he prepared the affidavit, Agent Gesi had been a special agent with the Drug Enforcement Agency for three years and had been involved in the investigation and dismantlement of over fifty marijuana cultivation operations. Based on his experience, special training, investigation, and information learned from several independent informants, Gesi stated he reasonably believed some or all of the described indicia of knowledge and/or participation in a marijua-

na cultivation and distribution scheme would be found at the Edward A. Breidenbach residence and surrounding outbuildings and fields. I find Plaintiffs have failed to come forward with sufficient facts to establish a constitutional violation and conclude that, under the *Malley* standard. Agent Gesi is immune from civil liability based on his conduct in obtaining the warrant to search Plaintiffs' residence.

### B. *Excessive Force.*

■ Plaintiffs' second theory of relief against Agent Gesi is that he "supervised and directed the activities of various defendant John Does" who used excessive force in executing the search warrants on August 21 and 22, 1993 (Compl.¶¶ 6, 14–16, 25). Their conduct, according to Plaintiffs, violated their Fourth Amendment right to be free of unreasonable searches and seizures. Plaintiffs' claim that, at Gesi's direction, their home was "besieged" and surrounded by officers and agents using police and military-style vehicles. Agents burst into their home and placed them in "mortal fear" (¶ 19). Military helicopters maintained "continuous aerial surveillance" both days, from which certain defendant John Does trained weapons on Plaintiff Edward A. Breidenbach as he went about his farm (¶ 25).

Specifically, Plaintiffs allege that on August 21, 1993, at approximately 4:30 a.m., defendants John Doe I through V banged on their door and demanded immediate entry (Compl., ¶ 16). The officers were heavily armed and wore balaclava masks (¶ 17). John Doe I loaded a shell into a shotgun and pointed it directly at Mr. Breidenbach (¶ 19). Plaintiffs claim they were "forcibly and violently" held at gunpoint and then "forcibly and violently" removed from their home (¶¶ 20–21). Plaintiffs claim the John Doe defendants "wantonly damaged, destroyed and defaced Plaintiffs' property" during the course of their search (¶ 24). The officers found no marijuana, but it is unclear at this stage of the proceedings whether they found other items identified in the warrant.

Agent Gesi moves to dismiss the excessive force claim. Gesi argues he is qualifiedly immune from suit because Plaintiffs' allegations are insufficient to state a constitutional claim against him directly.

■ The doctrine of respondeat superior does not apply to claims alleging constitutional violations. *Kite v. Kelley,* 546 F.2d 334, 336–37 (10th Cir.1976)(Arraj, J.)(citing *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Under *Rizzo,* a government official will not be liable for the alleged unconstitutional acts of his subordinates unless he can be linked affirmatively to it by facts showing he actively participated or acquiesced in the constitutional deprivation. *Id., applied in Winters v. Board of County Comm'rs,* 4 F.3d 848, 855 (10th Cir.1993), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1539, 128 L.Ed.2d 192 (1994)(applying affirmative link standard in supervisor liability search and seizure case). Here, there are no allegations that Gesi had any direct contact with Plaintiffs, that he was aware of the John Doe defendants' allegedly unconstitutional conduct or that he was even present when the warrants were executed. The only connection between Gesi and the John Doe defendants' conduct in the Complaint is that Gesi "supervised and directed" their activities generally (Compl.¶ 6) and that the unreasonable search took place "[a]t the direction of Gesi and Bolish." (¶ 25.) This is inadequate as a matter of law to support a claim for supervisor liability. *See Kite,* 546 F.2d at 337–38 (no "affirmative link" under *Rizzo* where only connection to defendant was that he was the "special agent in charge" of the FBI office when FBI agent disclosed plaintiff's arrest record in violation of FBI regulations).

### C. *Conspiracy.*

■ Plaintiffs' vague and conclusory assertion that "Defendants Gesi and Bolish, intentionally and with reckless indifference to Plaintiffs' constitutional rights, conspired to violate [their] right to be free from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution" is insufficient as a matter of law to support a conspiracy claim against Gesi. A complaint must allege specific facts showing agreement and concerted action among defendants. *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir.1989). Plaintiffs fail entirely to do so.

### III. *CONCLUSION.*

Based on the foregoing analysis and conclusions of law, the Motion of Defendant Nicola Gesi to Dismiss Plaintiffs' claims against him is GRANTED. The alternative Motion to Strike is DENIED. Within ten days of the date of this Order, Plaintiffs and remaining Defendants shall schedule a status conference with the court and file a joint status report. The report shall set forth in detail the status of discovery and include a proposed schedule for any additional discovery and for the filing of dispositive motions. Affirmative defenses not pursued by dispositive motion will be stricken. IT IS SO ORDERED.