**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RYLE EDWARD SPRINGMEN,
Plaintiff-Appellee,

v.                                                        No. 96-2432

ALEXANDRA WILLIAMS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-95-3493-L)

Argued: July 10, 1997

Decided: August 18, 1997

Before WILKINSON, Chief Judge, HAMILTON, Circuit Judge,
and NORTON, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Reversed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Hamilton and Judge Norton joined.

_____

**COUNSEL**

**ARGUED:** John Burnside Howard, Jr., Assistant Attorney General,
Baltimore, Maryland, for Appellant. Howard J. Fezell, Frederick,
Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney
General of Maryland, Baltimore, Maryland, for Appellant.

_____

**OPINION**

WILKINSON, Chief Judge:

Ryle Springmen brought this section 1983 action against Maryland Assistant State's Attorney Alexandra Williams, arguing that her advice to a police officer to initiate a prosecution against Springmen for reckless endangerment led to a violation of his Fourth Amendment rights. The district court denied Williams' motion to dismiss on the bases of absolute and qualified immunity. The district court erred in both determinations. Absolute prosecutorial immunity does not rest, as the district court held, on the technicality of who signed charging documents. Rather, it protects decisions that are integrally related to the charging process, such as Williams' decision to approve the prosecution here. Furthermore, qualified immunity lies unless there has been a clear violation of well established constitutional law. Any error in this case resulted from Williams' reasonable interpretation of unsettled law, not a constitutional violation. Accordingly, we reverse the judgment of the district court.

I.

On November 19, 1992, Officer George Rakowski of the Baltimore County Police Department responded to a burglar alarm call at Eastwood Guns and Ammo, a retail gun store owned and operated by appellee Ryle Springmen. The alarm could not be heard easily outside the shop, and Rakowski observed through the store's glass window and door that more than fifty handguns were displayed in an open case next to ammunition for the weapons. He also noted that none of the guns and ammunition displayed in the shop was secured. The police officer thus concluded that the weapons could easily be stolen and taken out through a garage and into the woods behind the store.

Appellant Alexandra Williams, in her capacity as Assistant State's Attorney, reviewed an application for a Statement of Charges and Summons prepared by Rakowski. The proposed Statement charged Springmen with reckless endangerment for the manner in which he operated Eastwood Guns. Williams advised Rakowski that the facts were sufficient to warrant filing the application. On December 2, 1992, Rakowski filed the application, and on December 7, the District

2

Court of Maryland for Baltimore County issued the requested Statement of Charges. Springmen appeared for trial, but the charge was dropped.

Springmen filed this action under 42 U.S.C. § 1983, alleging that Williams had violated his Fourth Amendment right to be free from an unreasonable seizure of his person. He claimed that there had been no probable cause for filing the reckless endangerment charge against him, and that Williams' advice was the proximate cause of the criminal summons which unreasonably deprived him of his liberty. Specifically, he asserted that the charged conduct fell within an exception to Maryland's reckless endangerment statute which states that it does not apply to "any conduct involving the manufacture, production, or sale of any product or commodity." Md. Ann. Code, art. 27, § 120(c).*

Williams filed a Rule 12(b)(6) motion to dismiss, asserting absolute prosecutorial immunity and qualified immunity. The district court denied the motion, and Williams filed this interlocutory appeal, see Mitchell v. Forsyth, 472 U.S. 511 (1985).

II.

In this case, a section 1983 suit challenges a prosecutor for an action at the core of her responsibilities -- deciding whether to proceed with a prosecution. Springmen's contentions that immunity does not lie in such a situation are meritless. The doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution. Imbler v. Pachtman, 424 U.S. 409 (1976). In addition, any error made by the prosecutor in this case was at most the result of a plausible reading of a criminal statute, not a violation of a clearly established constitutional right. Thus, under Harlow v. Fitzgerald, 457 U.S. 800 (1982), qualified immunity must lie as well. We address each issue in turn.

_____

*Maryland's reckless endangerment statute has been recodified at Md. Ann. Code, art. 27, § 12A-2. The new statute, however, contains an identical exception. Md. Ann. Code, art. 27, § 12A-2(b)(2).

3

A.

In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a prosecutor enjoys absolute immunity from suit for conduct "in initiating and in presenting the State's case." Id. at 431. The Court explained:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

Id. at 424-25. This court has repeatedly reaffirmed that a prosecutor is entitled to absolute immunity for claims that rest on her decisions regarding "whether and when to prosecute." Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996) (quoting Imbler, 424 U.S. at 431 n.33); see also Ehrlich v. Giuliani, 910 F.2d 1220 (4th Cir. 1990).

This case falls squarely under Imbler. Springmen complains of a deprivation of liberty resulting from an unlawful prosecution, and Imbler clearly holds that prosecutors are entitled to absolute immunity for decisions to prosecute. Springmen, however, attempts to avoid Imbler, contending that since Officer Rakowski, and not Williams, actually filed the criminal charges, Williams is not protected by absolute immunity. He argues that Imbler does not apply because Williams did not actually initiate a prosecution but rather instructed another to do so.

We reject Springmen's reading of Imbler. That case did not rest on the technicality of a prosecutor's signature on a charging document, but rather more broadly immunized prosecutors from liability for conduct "which is intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430. It is difficult to imagine conduct more intimately related to the judicial process than a prosecutor's decision to proceed with a prosecution. The fact that in this case

4

a police officer implemented the prosecutor's decision does nothing to change this conclusion. Indeed, the irony of Springmen's suit is that it tacitly acknowledges this position. Springmen sued Williams because he believed that she was the party that had the final say in going forward with his prosecution. If this view is correct, and it is, Williams is obviously protected by Imbler. If, however, it was the action of Officer Rakowski and not Williams' advice that caused Springmen's prosecution, he has sued the wrong party because Williams' action could in no way be considered the proximate cause of any harm resulting from that prosecution.

This case is not, as Springmen argues, controlled by Burns v. Reed, 500 U.S. 478 (1991). Burns held that advising police in the investigative phase of a criminal case was not "intimately associated with the judicial phase of the criminal process." Id . at 493 (citation omitted). However, the Court nowhere suggested that it intended to cut back on Imbler's protection of conduct directly related to the decision to prosecute a case. Indeed, the Court has rejected with crystal clarity the position that absolute immunity is unavailable for conduct related to the evaluation of a case and other preparations preceding the formal initiation of a prosecution:

> We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of evidence assembled by the police . . . .

Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993) (emphasis added).

Our decision today is not a close one. While the Supreme Court has not extended absolute immunity to all legal advice by prosecutors, it has never hesitated to grant such immunity to prosecutors acting as Williams did here -- in their core role as advocates for the state. The primary check on prosecutors acting in that role lies in the judicial process, not in section 1983 suits. Like all criminal defendants, Springmen was free to argue that the prosecutor had improperly

5

charged him of a crime, and, indeed, he apparently pressed this argument with some success. However, as the Supreme Court observed in Imbler, to allow such a defense to serve as the basis for a section 1983 suit would only serve to weaken the "ultimate fairness of the operation of the [judicial] system." 424 U.S. at 427.

B.

The Supreme Court has recently granted certiorari in Fletcher v. Kalina, 93 F.3d 653 (9th Cir. 1996), to further address the doctrine of absolute prosecutorial immunity. Fletcher deals with a claim of absolute immunity for executing an affidavit in support of an arrest warrant -- conduct which is not at issue here. Fletcher would thus impact our decision only in the event that the Court decided to restrict the reach of Imbler substantially. In that event, however, Williams would still be entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Springmen argues that it is a clear violation of the Fourth Amendment to force a person to appear before a court to defend himself when that person has not violated any law.

Springmen's claim rests on his contention that his conduct clearly fell outside the scope of Maryland's reckless endangerment statute, which exempts from its coverage "any conduct involving the manufacture, production, or sale of any product or commodity." Md. Ann. Code, art. 27, § 120(c). He argues that "any conduct" must be interpreted to cover all activities related to the maintenance of a retail establishment no matter how incidental.

It is far from clear, however, that the exemption was designed to cut so broadly. A reasonable person could read this language and conclude that it was designed for the limited purpose of precluding criminal prosecution in standard product liability cases. The decision of a Maryland judicial officer to issue the requested Statement of Charges in this case supports the reasonableness of this interpretation. Under

6

this more limited reading of the section 120(c) exemption, activities such as hazardous display, transportation, or storage of potentially dangerous products would be subject to prosecution.

The Maryland courts have yet to interpret section 120(c), and we make no comment on which reading is correct. However, even if Williams is later found to have read the exemption too narrowly, the most that can be said is that she made a mistake "traceable to unsettled law." Pritchett v. Alford, 973 F.2d 307, 313 (4th Cir. 1992). This is precisely the sort of official action that qualified immunity shields from liability. As we stated in Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." No such bright line existed here, and Williams is clearly entitled to qualified immunity.

III.

For the foregoing reasons, we conclude that Williams was entitled to immunity from suit. Because the district court erred in not granting her motion to dismiss, we hereby reverse.

REVERSED

7