**Michael D. VAN DEELEN, Plaintiff,**

v.

**CITY OF EUDORA, KANSAS; Bill Long; Greg Dahlem; Ken Massey; Doug Hunsinger; Frank Diehl; and Nine John and/or Jane Does; Defendants.**

**No. 96–4040–SAC.**

United States District Court, D. Kansas.

June 29, 1999.

---

Michael D. VanDeelen, Eudora, KS, for Plaintiff.

Christopher F. Burger, Office of Atty. gen., Topeka, KS, Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants.

John M. Cooley, Tamko Roofing Products, Inc., Joplin, MO, Jeffrey A. Kennard, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Theresa M. Nuckolls, Riling, Burkhead & Nitcher, Chtd., Lawrence, KS, Glenn R. Trapp, Office of Dist. Atty., Lawrence, KS, Roger W. Warren, Sanders Conkright & Warren LLP, Kansas City, MO, for Movant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This 42 U.S.C. § 1983 civil rights case comes before the court on the defendant Frank Diehl's motion to dismiss complaint (Dk.180). Though this motion has been fully briefed for some time, the court's docket has kept it from rendering a timely decision. The court apologizes for this unavoidable delay.

The plaintiff appearing pro se has sued Frank Diehl in his individual capacity[1] for actions taken while he was a prosecuting attorney in the District Attorney's office in Douglas County, Kansas. In his second amended complaint, the plaintiff includes Diehl with other defendants in general allegations of "pattern of behavior" and differential treatment of the "Van Deelen family class." (Dk.161, ¶¶ 12–14). Specifically, the plaintiff in count five alleges a conspiracy and names Diehl as a co-con-

---

1. The plaintiff clarifies in his response to the motion that he has "sued defendant Diehl in his individual capacity only." (Dk.190, ¶ 1).

spirator who did the following in furtherance of the conspiracy:

> [D]efendant Diehl, while acting under color of state law in his capacity as an investigator for the Douglas County, Kansas, District Attorney's Office, intentionally failed to do an adequate investigation into case number 94–12898 in which plaintiff was mentioned as the assailant of Jimmy Costello on October 21, 1994. Defendant Diehl knowingly made a false determination that probable cause for plaintiff's arrest existed when he (Diehl) knew that probable cause did not in fact exist. Defendant Diehl then knowingly filed a false complaint in Douglas County District Court alleging that plaintiff was guilty of a crime. The filing of said complaint caused a warrant to be issued for plaintiff's arrest. Plaintiff was arrested and charged with misdemeanor battery. During plaintiff's trial held on February 21, 1995, plaintiff was found not guilty.
>
> 49. That in furtherance of the conspiracy, defendant Diehl denied plaintiff certain of his rights guaranteed by the U.S. Constitution, including his rights of due process and equal protection of the laws.

(Dk. 161, ¶¶ 48 and 49). The plaintiff repeats the same allegations of conduct by Diehl in support of a separate § 1983 claim (count 8) brought only against Diehl. (Dk. 161, ¶¶ 60 and 62). For purposes of this motion only, Diehl adopts these allegations and does not challenge them factually.

In his motion, Diehl argues first that the plaintiff's allegations against him exclusively concern his performance of prosecutorial duties for which he enjoys absolute immunity. Specifically, the plaintiff accuses Diehl of (1) inadequately investigating the criminal case, (2) falsely determining probable cause, and (3) filing a false criminal complaint. Diehl cites Tenth Circuit precedent in support of his position that each of these activities is "intimately associated" with his functions in initiating a prosecution and advocating the state's po-

sition. The plaintiff opposes the motion arguing that these alleged activities are in the nature of investigatory functions for which Diehl only has qualified immunity.

## STANDARDS GOVERNING MOTION TO DISMISS

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993); *see Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752, 753 (10th Cir. 1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted); *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472 (10th Cir.1990) ("Under Rule 12(b)(6), dismissal is inappropriate unless plaintiff can prove no set of facts in support of his claim to entitle him to relief."). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986)).

A court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987). It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz*,

948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989).

No less than the Supreme Court has said that a pro se plaintiff's complaint must be construed liberally and judged against a less stringent standard than that used for pleadings drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Tenth Circuit has explained this rule, as follows:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Hall v. Bellmon,* 935 F.2d at 1110 (footnote omitted). In addition, courts must afford pro se litigants a "reasonable opportunity to remedy the defects in their pleadings." *Hall v. Bellmon,* 935 F.2d at 1110 n. 3. It remains true that a court must not "assume the role of advocate for the pro se litigant." *Id.* at 1110 Consequently, the court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v.*

*City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

## ABSOLUTE IMMUNITY

In *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court recognized a rule of absolute immunity when a prosecutor's activities are "intimately associated with the judicial phase of a criminal process." In concluding in *Imbler* that a prosecutor in "initiating a prosecution and in presenting the State's case" was absolutely immune, the Supreme Court "did not attempt to describe the line between a prosecutor's acts in preparing for those functions, some of which would be absolutely immune, and his acts of investigation or 'administration,' which would not." *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (citation omitted).

The Supreme Court in later decisions reaffirmed the absolute immunity protection afforded a prosecutor serving in the advocacy role. In *Burns v. Reed,* 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Supreme Court recognized such immunity for a prosecutor's role in applying for a search warrant and presenting evidence in support of it. In *Buckley,* the Court reiterated:

> We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

509 U.S. at 273, 113 S.Ct. 2606. Most recently in *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 508, 139 L.Ed.2d 471 (1997), the Supreme Court held that the prosecutor's activities in preparing and filing an information and motion for an ar-

rest warrant were protected by absolute immunity.

In the above cited cases, the Supreme Court also held that the defense of absolute immunity is unavailable to a prosecutor for actions taken in other than an advocacy role. When giving legal advice[2] to police, a prosecutor is not performing a function closely associated with the judicial process and is protected only by qualified immunity. *Burns*, 500 U.S. at 492–96, 111 S.Ct. 1934. When holding a press conference or when allegedly fabricating evidence during the preliminary investigation of an unsolved crime, a prosecutor is not acting as an advocate and is protected only by qualified immunity. *Buckley*, 509 U.S. at 275–78, 113 S.Ct. 2606. When personally attesting to the truthfulness of statements included in a certification, a prosecutor is not acting as an advocate but as a complaining witness. *Kalina*, 118 S.Ct. at 508–09.

 Evident from these holdings is that the absolute immunity extended to prosecutors "is not grounded in any special 'esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" *Kalina*, 118 S.Ct. at 507 (quoting *Malley v. Briggs*, 475 U.S. 335, 342, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Consequently, as first established in *Imbler*, it is the nature of the function being performed and not the mere identity of the person as a prosecutor that determines whether absolute immunity exists. *Kalina*, 118 S.Ct. at 507; *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. If a prosecutor's activities are within the function of an officer of the court or an advocate, then absolute immunity prevails. *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606. On the other

hand, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* (citation omitted). Thus, whether a prosecutor benefits from absolute or qualified immunity depends on the particular actions or conduct being challenged. *See Kalina*, 118 S.Ct. at 506–08. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. at 486, 111 S.Ct. 1934.

The plaintiff maintains his suit against Diehl is for actions done in an investigatory role and not as an advocate for the state. The plaintiff insists that Diehl's affidavit establishes that he "only investigated, not prosecuted, the Costello case." (Dk.190, p. 2). The plaintiff further argues:

> In paragraph b on page 4 of his affidavit, defendant Diehl states, "When the officer's report was submitted to the District Attorney's office *I made a determination* (emphasis added) that probable cause for prosecution was presented by the Offense Report." In paragraph d on page 5 of his affidavit, defendant Diehl states, "I also drafted the Complaint filed against Michael Van Deelen.... I filed the charge only *after making an independent determination* (emphasis added) the Offense Report submitted to me showed that criminal activity had occurred within Eudora, Kansas, and Michael D. Van Deelen is the party who engaged in such criminal activity." Defendant Diehl's affidavit includes a copy of the Complaint he initiated. His signature appears on the line labeled "Complainant". Nowhere on the

---

**2.** The plaintiff's § 1983 suit in *Burns* challenged the prosecutor's acts of. "(1) giving legal advice to the police on the propriety of hypnotizing a suspect and on whether probable cause existed to arrest that suspect, and (2) participating in a probable-cause hearing." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The Supreme Court in *Burns* recognized absolute immunity for the prosecutor's participation in the judicial proceeding but denied the same immunity for giving legal advice to the police. 500 U.S. at 492–96, 111 S.Ct. 1934.

complaint (or the warrant) does it list defendant Diehl's name as a prosecutor. A determination of guilt can only be made by an investigation.... Whether or not defendant Diehl acted as investigator in the Costello incident is a material fact under dispute between the parties. Plaintiff has the right to initiate discovery as to this fact.

3. In paragraph 29e (page 13) of the Answer of Eudora Defendants to Plaintiff's Second Amended Complaint, the defendants state, in reference to the Costello case, that "the office of the District Attorney informed Chief Long that no further investigation would be required.".... It is therefore clear that defendant Diehl gave advice to the Eudora police during the course of their investigation of the Costello incident.

(Dk.190, pp. 3–4). In short, the plaintiff seeks to label Diehl's work as investigatory because the district attorney admittedly made an independent determination whether probable cause existed. The plaintiff, however, also takes issue with Diehl giving advice to the police chief about the need for additional investigation and with Diehl signing the criminal complaint as the complainant in support of the arrest warrant.

In *Kalina*, the Supreme Court reaffirmed that all of the following matters call for a prosecutor's "exercise of professional judgment:" "the determination that the evidence was sufficiently strong to justify a probable-cause finding," the "decision to file charges," the "presentation of the information" to the court, the "drafting of the certification" and "even the selection of the particular facts to include in the certification to prove the evidentiary support for the finding of probable cause." 118 S.Ct. at 509–10. Indeed, "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler*, 424 U.S. at 431, n. 33, 96 S.Ct. 984. Thus, Diehl is entitled to absolute immunity for his prosecutorial actions in reviewing and evaluating the evidence found in the police offense reports and witness statements, in determining that the evidence was sufficient to support a finding of probable cause, and in deciding to file charges. That Van Deelen accuses Diehl of having improper or malicious motives "is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions." *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997).

It is true that the plaintiff alleges in his second amended complaint that Diehl "intentionally failed to do an adequate investigation into case number 94–12898 in which plaintiff was mentioned as the assailant of Jimmy Costello on October 21, 1994." (Dk. 161, ¶¶ 48 and 60). The plaintiff's complaint does not allege what, if anything, that Diehl did in an investigatory capacity. In his response to the motion to dismiss, the plaintiff reveals the specifics behind his general allegation:

The Affidavit of Frank Diehl makes it clear that Diehl only investigated, not prosecuted, the Costello case. In paragraph b on page 4 of his affidavit, defendant Diehl states, "When the officer's report was submitted to the District Attorney's office *I made a determination* (emphasis added) that probable cause for prosecution was presented by the Offense Report." In paragraph d on page 5 of his affidavit, defendant Diehl states, "I also drafted the Complaint filed against Michael Van Deelen... I filed the charge only *after making an independent determination* (emphasis added) the Offense Report submitted to me showed that criminal activity had occurred within Eudora, Kansas, and Michael D. Van Deelen is the party who engaged in such criminal activity."

(Dk.190, pp. 2–3). What the plaintiff believes to be investigatory functions are nothing more than the prosecutor's exercise of professional judgment in reviewing

and evaluating the evidence, in deciding whether to initiate a prosecution, and in drafting the criminal charges. All of this work was done in Diehl's capacity as an advocate for the State and "was integral to the initiation of the prosecution." *Kalina,* 118 S.Ct. at 509; *see Ireland v. Tunis,* 113 F.3d at 1447 ("Absolute prosecutorial immunity will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." (footnoted omitted)). That the trial of the case was eventually assigned to another assistant district attorney does not relegate Diehl's role to a mere investigator or administrator. *See Brodnicki v. City of Omaha,* 75 F.3d 1261, 1267 (8th Cir.), *cert. denied,* 519 U.S. 867, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996). Indeed, there is nothing to indicate that Diehl was acting outside his authority and professional judgment as an advocate for the State in evaluating the evidence and filing the criminal charge.

In his response, the plaintiff identifies two particular actions allegedly taken by Diehl which may be outside the aegis of absolute prosecutorial immunity [3] First, Diehl signed the criminal complaint as the complainant under oath on which the state judge relied in finding probable cause for issuance of the arrest warrant. Second, Diehl told the police chief that no further investigation of the Costello matter would be required. The court separately addresses each alleged action below,

■ In *Kalina,* the Supreme Court held that the prosecutor did not enjoy absolute immunity for her conduct in executing a "Certification for Determination of Probable Cause" in which "[s]he personally vouched for the truth of the facts set forth in the certification under penalty of perjury." 118 S.Ct. at 505. The Supreme Court likened the prosecutor's execution of the certification to a witness testifying about facts:

Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

118 S.Ct. at 510. Relying on *Kalina,* the Tenth Circuit recently denied absolute immunity to a prosecutor for signing a criminal complaint under penalty of perjury. *Roberts v. Kling,* 144 F.3d 710, 711 (10th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999). The court held that the prosecutor was entitled to only "qualified immunity for his execution of the criminal complaint, by which he affirmed the truth of the facts set forth in that document to the best of his information and belief." *Id.* at 711. As in *Kalina* and *Roberts,* the defendant Diehl signed a charging document, here a criminal complaint, as the complainant under oath on which the state court relied in finding probable cause and issuing an arrest warrant. Qualified immunity is the extent of Diehl's protection from suit for vouching to the truth of the criminal complaint.

■ The other discrete act allegedly taken by Diehl concerns his advice to Chief Long that no further investigation of the Costello matter would be required. The plaintiff contends the Eudora defendants' answer to his second amended complaint and the letter from their attorney show "that defendant Diehl gave advice to the Eudora police during the course of their investigation of the Costello incident." (Dk.190, pp. 3–4). Citing *Burns v. Reed,* the plaintiff contends Diehl's actions do not warrant the protection of absolute immunity. In reply, Diehl argues this claim is "specious:"

---

**3.** Although neither of these acts are specifically alleged in the plaintiff's complaint, the court will presume that the plaintiff would include such allegations in an amended complaint.

Plaintiff claims that the alleged statement from Mr. Diehl to Chief Long qualifies as legal advice which would prevent the application of Mr. Diehl's absolute immunity. Assuming such a statement was made, it was not in response to any determinative inquiry and did not make any affirmation other than that the offense report showed probable cause. Plaintiff wants this court to rule in such a fashion as to preclude any communication between the investigating police and prosecutor. Certain situations may arise where the legal advice exception would be applicable, but this is not one. It is not like *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), where a prosecutor told the police that they could interrogate a witness under hypnosis and that they "probably had probable cause." This case was merely the acceptance of an Offense Report replete with probable cause.

(Dk.197, p. 4).

Contrary to plaintiff's argument, his allegation that Diehl advised Chief Long is not controlled by *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The Court in Burns said it did "not believe that advising the police in the investigative phase of a criminal case is so 'intimately associated with the judicial phase of the criminal process.'" 500 U.S. at 493, 111 S.Ct. 1934 (quoting *Imbler,* 424 U.S. at 430, 96 S.Ct. 984). "However, the Court nowhere suggested that it intended to cut back on Imbler's protection of conduct directly related to the decision to prosecute a case." *Springmen v. Williams,* 122 F.3d 211, 213 (4th Cir.1997). Instead, the Court in *Burns* recognized the inquiry would turn on "whether the prosecutor's actions are closely associated with the judicial process." 500 U.S. at 495, 111 S.Ct. 1934. Thus, the question is not simply a matter of whether the prosecutor communicated advice to the police but rather was the advice closely associated to the attorney's decision to prosecute. *See,*

*e.g., Lomaz v. Hennosy,* 151 F.3d 493, 498–99 (6th Cir.1998) (Preparation of search warrant and affidavit were actions of an advocate in that the police investigation had already revealed the presence of evidence and the prosecutors were acting only to obtain and preserve that evidence); *Springmen v. Williams,* 122 F.3d at 212–14 (Absolute immunity extended to prosecutor's review and advice to police officer that officer's application for a statement of charges contained sufficient facts to warrant its filing); *Wilson v. City of Chanute,* 43 F.Supp.2d 1202, 1213 (D.Kan. 1999) (Prosecutor's contact with police about changing the conditions of bail protected by absolute immunity. "To the extent that Beagley gave legal advice, however, the advice concerned her advocacy of bail—not an investigative function—and therefore was intimately associated with the judicial process." (citation omitted)); *Orobono v. Koch,* 30 F.Supp.2d 840, 841–42 (E.D.Pa. 1998) ("[O]rdering a suspect's arrest is within the core functions of a prosecutor."); *Sheehan v. Colangelo,* 27 F.Supp.2d 344, 345 (D.Conn.1998) (Prosecutor's instructions to a police officer to prepare an affidavit in support of an arrest warrant and to leave out certain exculpatory information are covered by absolute immunity). In short, "[w]hile the Supreme Court has not extended absolute immunity to all legal advice by prosecutors, it has never hesitated to grant such immunity to prosecutors acting ... in their core role as advocates for the state." *Springmen,* 122 F.3d at 214.

The plaintiff bases his allegation that Diehl gave legal advice on the following paragraph appearing in the Eudora defendants' answer:

e. Defendant Massey prepared a Standard Kansas Offense Report including his interviews with witnesses; gave it to the District Attorney's office of Douglas County, Kansas; *the office of the District Attorney informed Chief Long that*

*no further investigation would be required.* The office of District Attorney made the decision to prosecute the case after determining probable cause existed. Massey made full disclosure of all relevant information then known to him. At no time did he withhold relevant information from the District Attorney's office.

(Dk.173, ¶ 29(e)) (underlining added). When placed within its factual context, Diehl's advice is closely associated with his function as the State's advocate to decide whether to prosecute. Diehl purportedly made this statement only after the police had completed their investigation and turned over all the reports to his office. In this context, Diehl's statement is really nothing more than his communication to the police chief that he has reviewed the police reports and concurs with their conclusion that there is sufficient evidence in those reports on which to prosecute. The plaintiff simply has no legal authority for characterizing Diehl's particular statement here as legal advice within the parameters of *Burns.*

In summary, the court finds that Diehl is entitled to absolute immunity as to all allegations found in the plaintiff's second amended complaint or advanced in his opposition to the motion to dismiss, except for the allegation that Diehl signed the criminal complaint vouching for its truthfulness in front of a judicial officer. Qualified immunity is the extent of Diehl's protection for this latter conduct.

## QUALIFIED IMMUNITY

The Supreme Court has recognized a qualified immunity for state officials sued under § 1983. " '[O]fficials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Johnson v. Fankell,* 520 U.S. 911, 117 S.Ct. 1800, 138 L.Ed.2d 108, 114 (1997) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Outcome-determinative at any stage of the litigation, this defense can protect officials from "the burdens of broad-ranging discovery," *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727, when dismissal on the pleadings is appropriate, and from the burdens of trial "when evidence fails to uncover evidence sufficient to create a genuine issue," *Johnson, supra.* "[T]he ultimate purpose of qualified immunity is to protect the state and its officials from overenforcement of federal rights." *Id.*

"In the context of a 12(b)(6) motion to dismiss, ... the qualified immunity defense is limited to the pleadings," and "the allegations in the complaint and any reasonable inferences ... from them" are drawn in favor of the plaintiff. *Dill v. City of Edmond, Okl.,* 155 F.3d 1193, 1203–04 (10th Cir.1998). In this context, the court applies "a heightened pleading standard,[4] requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.' " *Dill,* 155 F.3d at 1204 (quoting *Breidenbach v. Bolish,* 126 F.3d 1288, 1293 (10th Cir.1997)). Once this defense is

---

4. It has been argued that *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), precludes a heightened pleading standard as part of the qualified immunity jurisprudence. *See Judge v. City of Lowell,* 160 F.3d 67, 73–75 (1st Cir.1998) (Held that *Crawford–El* "permitted an approach ... calling for the pleading of specific facts from which to infer illegal motive.") The Tenth Circuit, as well as the district courts of this circuit, have continued to use the heightened pleading standard after *Crawford–El. See, e.g., Taylor v. Harrington,* 172 F.3d 63, 1999 WL 40969 (10th Cir. Feb.1, 1999) (table); *Dill v. City of Edmond, Okl.,* 155 F.3d 1193, 1203–04 (10th Cir.1998); *Apffel v. Huddleston,* 50 F.Supp.2d 1129 (D.Utah 1999); *Keys Youth Services, Inc. v. City of Olathe,* 38 F.Supp.2d 914 (D.Kan. 1999). The court is satisfied that it should continue to apply the heightened pleading standard.

raised, the plaintiff "may amend his complaint to include additional 'specific, non-conclusory allegations of fact' sufficient to allow the district court to determine whether Defendants are entitled to qualified immunity." *Id.* The plaintiff here not only wants to stand on his second amended complaint and but also wants to reserve his opportunity for subsequent amendments if the complaint is found wanting.

At the Rule 12(b)(6) stage, qualified immunity protects defendants performing discretionary functions from individual liability unless, on the face of the complaint, the plaintiff alleges the violation of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. 2727; *see Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir.1996), *cert. denied,* 519 U.S. 1149, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997). Once a defendant asserts a defense of qualified immunity, the "court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert,* —— U.S. ——, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (citations omitted). "If the defendant's conduct as alleged by the plaintiff does not violate the law, we need not reach the issue of whether the law was clearly established." *Clanton v. Cooper,* 129 F.3d 1147, 1153–54 (10th Cir.1997) (citation omitted).

In his second amended complaint, the plaintiff alleges that Diehl "knowingly made a false determination that probable cause for plaintiff's arrest existed" and "knowingly filed a false complaint in Douglas County District Court alleging that plaintiff was guilty of a crime." (Dk.161, p. 17). In his response to the defendant's motion, the plaintiff further asserts:

> [P]laintiff's Second Amended Complaint alleges facts which defeat defendant Diehl's qualified immunity claim. Furthermore, the Offense Report attached to the Affidavit of Frank Diehl clearly shows that probable cause for plaintiff's arrest did not exist. In said report, there were statements by several witnesses that Jimmy Costello and his friends were engaged in disorderly conduct at the Eudora football field just prior to the incident with plaintiff. In addition, as the Offense Report shows, not one witness, except Costello, identified plaintiff by name as having been involved in an altercation with Costello. The witnesses other than Costello gave no identification of plaintiff which would distinguish him from an adult male with average height and weight. Furthermore, certain witnesses said they could identify the person who was in the altercation with Costello if they could see him again.... In Diehl's Memorandum, defendant Diehl improperly cites *Malley v. Briggs* in his argument for qualified immunity. A check of said case reveals that it says nothing about qualified immunity for prosecutors.

(Dk.190, ¶ 5). From what he alleges and asserts, the plaintiff does not appear to accuse Diehl of fabricating evidence, of knowingly including a false statement of another, or of omitting or misstating facts found in the offense reports that were material to the existence of probable cause. Rather, the plaintiff appears to only accuse Diehl of making the false sworn statement that probable cause existed when the police reports on which Diehl relied in making that statement do not sustain an opinion of probable cause.

"In the context of arrest warrants, the Supreme Court affords officials broad qualified immunity protection." *Ireland v. Tunis,* 113 F.3d at 1448 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). In *Malley,* the plaintiffs sued a police officer alleging their constitutional rights were violated when the officer obtained their arrest warrants by preparing and submitting a complaint and affidavit which allegedly failed to establish probable cause. 475 U.S. at

337, 106 S.Ct. 1092. The Supreme Court observed: "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." 475 U.S. at 341, 106 S.Ct. 1092. Relying on the objective reasonableness standard, the Court articulated the following test: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, (citation omitted), will the shield of immunity be lost." 475 U.S. at 344–45, 106 S.Ct. 1092. This same objective reasonableness test is "appropriate for determining" whether a prosecutor is immune in "vouch[ing] for the truth of the contents of criminal complaint in front of a judicial officer" that cause an arrest warrant to issue. *Ireland v. Tunis*, 113 F.3d at 1449; *see Kohl v. Casson*, 5 F.3d 1141, 1146–47 (8th Cir.1993). In a case such as this, a prosecutor "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley*, 475 U.S. at 341, 106 S.Ct. 1092.

■ The long and clearly established law under the Fourth Amendment is that the "warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' if the false statement is necessary to a finding of probable cause." *Clanton*, 129 F.3d at 1154 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)); *see Breidenbach v. Bolish*, 126 F.3d at 1292. The Tenth Circuit in Breidenbach summarized the following procedure governing a Franks claim:

> In the context of a *Franks* claim alleging the knowing or reckless submission of false information in a warrant affidavit, this court has previously held that if the plaintiff "is able to prove the necessary deliberate falsehood or reckless disregard to impeach a facially valid warrant, the reasonableness inquiry has to be resolved against the defendant since no reasonably competent officer could believe [a search] legal where it was his deliberate reckless deception that led the magistrate to issue the warrant." *Beard [v. City Northglenn, Colo.]*, 24 F.3d [110] at 115 [ (10th Cir.1994) ]. On the other hand, if the plaintiff fails to allege facts sufficient to demonstrate a Fourth Amendment violation, "there is no need to proceed any further; [and] the case ends in defendant's favor."

126 F.3d at 1293.

The plaintiff's second amended complaint does not contain specific, non-conclusory factual allegations sufficient to demonstrate a Fourth Amendment violation. What the plaintiff alleges is little more than "a conclusory statement with no foundation in any specific facts." *Breidenbach*, 126 F.3d at 1293. There is nothing to support his position that Diehl knowingly made a false sworn statement in support of the arrest warrant. Indulging the plaintiff, the court will look to his response opposing dismissal.[5]

■ In his response, the plaintiff accuses Diehl of making the false sworn statement that probable cause existed when the police reports on which Diehl relied in making that statement do not

---

5. In his response, the plaintiff asks the court to review his second amended complaint and: "Should the Court find that any such count of plaintiff's Second Amended Complaint fails to allege sufficient facts to defeat defendant Diehl's qualified immunity claim, plaintiff requests that the Court grant him additional time to come forward with additional facts and allegations that will defeat said claims."

(Dk.190, ¶ 4). The court disapproves of the plaintiff's piecemeal approach, particularly when the deficiencies with the plaintiff's complaint are so readily apparent and when the plaintiff has subsequently deposed Diehl. It is for this reason that the court has assumed that the plaintiff would simply amend his complaint to include the additional factual assertions found in his response.

sustain an opinion of probable cause. This assertion, by itself, is also a conclusory statement lacking any specific facts. In his response, the plaintiff does expound on this assertion by specifically alleging that the victim and his friends were engaged in disorderly conduct, that the victim was the only witness who identified the plaintiff by name, and that some witnesses gave no distinguishable description of the alleged assailant. Even if these specific allegations were added to the plaintiff's complaint, the court would still find the plaintiff's complaint failed to allege facts, which if proved, would demonstrate that Diehl's sworn statement regarding probable cause was not objectively reasonable in light of Fourth Amendment law. Implied in the plaintiff's specific allegations are the following: that there were witnesses to the altercation, that the witnesses gave statements regarding the altercation, and that the victim gave a statement identifying Van Deelen as the assailant. Assuming for now that the plaintiff could prove these allegations, the court cannot conclude from them that a reasonably competent prosecutor or officer in Diehl's position would not have made the sworn statement that there was probable cause justifying an arrest warrant. In short, the plaintiff has not alleged in his complaint nor asserted in his response specific facts sufficient to demonstrate a Fourth Amendment violation.

As reflected above, the court indulged the plaintiff by assuming he would amend his complaint with the particular assertions found in his response. The plaintiff had the opportunity to seek an amendment following Diehl's motion, but he chose to stand on his second amended complaint while reserving the right to amend later in the event of an adverse ruling. The court does not condone this procedural posture taken by the plaintiff. Under these circumstances, there seems little reason to offer the plaintiff yet a third opportunity at coming forth with specific factual allegations. Even so, in deference to the plaintiff's pro se status, the court will permit the plaintiff to file proposed amendments accompanied by a timely motion to reconsider and supporting memorandum that address the deficiencies noted above on the following condition: that the plaintiff also provide the court with cause for his delay in bringing the particular factual allegations before the court.

## INJUCTIVE RELIEF

It is true that "neither qualified nor absolute immunity precludes prospective injunctive relief except in rare circumstances not relevant here." *Lemmons v. Law Firm of Morris and Morris,* 39 F.3d 264, 267 (10th Cir.1994) (citations omitted) ("A prosecutor may not simply raise the shield of official immunity and continue to act in an unconstitutional manner without fear of judicial orders to the contrary." (citation omitted)). The plaintiff, however, fails to allege in his complaint that he will confront the same challenged conduct by the defendant Diehl. A plaintiff seeking declaratory and injunctive relief must allege that he will face misconduct in the future. *Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1498 n. 14 (10th Cir.1995). The plaintiff further admits that the defendant Diehl is no longer employed as a prosecutor in Douglas County, Kansas. *See Martinez v. Winner,* 771 F.2d 424, 436 (10th Cir.) (Claim for injunctive relief against judge was moot after the judge resigned from office,), *modified on rehearing,* 778 F.2d 553 (10th Cir.1985), *vacated on other grounds,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986). There being no alleged likelihood that the plaintiff will face the same misconduct at the hands of the defendant Diehl, the plaintiff's claim for injunctive relief must be dismissed.

IT IS THEREFORE ORDERED that the defendant Diehl's motion to dismiss (Dk.180) is granted for the reasons stated above.