**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RONALD R. MOLINA,

      Plaintiff-Appellant,

v.

MIKE SPANOS, ROBERT J.
LUCKING, PERRY ROSE, KEN VAN
WAGONER, and WASATCH
COUNTY SHERIFF'S
DEPARTMENT,

      Defendants-Appellees.

No. 98-4119
(D.C. No. 96-CV-23-K)
(D. Utah)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **EBEL** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

This action arose out of a drug investigation of plaintiff Robert R. Molina and Clifford Molina, plaintiff's brother.  The investigation led to their subsequent arrest, a search of plaintiff's property, the seizure of plaintiff's home, the initiation of criminal drug charges, and the filing of a forfeiture proceeding. Plaintiff appeals from the district court's entry of summary judgment in favor of defendants Mike Spanos, the sheriff of Wasatch County, Utah; Robert J. Lucking, Perry Rose, and Ken Van Wagoner, law enforcement officers working with the Wasatch Area Drug Enforcement Network (a multi-jurisdictional drug task force known as WADEN); the Wasatch County Sheriff's Department; and John Does 1 through 10, on his federal claims under 42 U.S.C. §§ 1982 and 1983 that defendants violated his constitutional rights and his state claims of false arrest, false imprisonment, intentional infliction of emotional distress, defamation, conversion, and violation of property rights under the Utah Constitution.  He also appeals the district court's orders refusing to compel production of requested discovery, excluding certain evidence, and denying his motion for partial summary judgment.  We affirm in part, reverse in part, and remand for further proceedings.

-2-

## I.    BACKGROUND

In 1990, plaintiff, who is of Hispanic descent, moved to Heber City, Utah, from Miami, Florida.  As a self-employed certified public accountant, writer, and real estate finance expert, he conducted his business from his home. Shortly after relocating, plaintiff began to suspect that his house was under police surveillance.

In 1992, when plaintiff was visiting in another state, his teenaged son called the police for assistance in removing two acquaintances from the house. Upon responding to the call, defendant Rose, a Heber City police officer, arrested the son, along with the other two individuals, for use and possession of a controlled substance.  Subsequently, police obtained a search warrant and returned to the Molina home to search it.  The son eventually pleaded guilty to attempted use of a controlled substance.  Somewhat later, plaintiff's brother Clifford Molina, who "has a serious drug problem," Appellant's App., Vol. 1 at 460 (plaintiff's deposition), moved into plaintiff's home.

### A.    The Investigation

In 1994, the owner of a bar in Heber City expressed to defendant Lucking, a deputy with the Wasatch County sheriff's office and the WADEN coordinator, and defendant Van Wagoner, also a deputy sheriff and the former coordinator, her suspicions that plaintiff and Clifford Molina were involved in drug activity.  She indicated that plaintiff "flashes money" and "buys girls gifts" and, possibly, that

she had observed Clifford Molina participate in a drug transaction. Addendum to Brief of Appellees Spanos, Lucking, Van Wagoner and Wasatch County Sheriff's Dept. (Addendum), Tab 2 (Lucking deposition at 64). Based on this information, Lucking launched a WADEN investigation. He placed Barbara McClure, a confidential informant employed by WADEN, in the bar as a part-time employee and instructed her to become acquainted with the Molinas.

McClure followed instructions and became friendly with plaintiff and his brother. Soon, however, McClure came to believe that Clifford, not plaintiff, "was doing the buying and the selling [of drugs]. . . . and was the dealer." Appellant's App., Vol. 1 at 309 (McClure deposition). When she told Lucking of her conclusion, he began to distrust her, thinking that she was getting "[p]ersonally involved" and "too close to Ron Molina." Id. at 368 (Lucking deposition). He added another confidential informant, James McDaniel, to the investigation.

Rose was assigned to monitor the informants' activities. Before planned buys, Rose and other WADEN team members generally conducted searches of the informants and wired them with transmission devices. During the transactions, WADEN maintained visual and audio contact. Afterwards, they searched and debriefed the informants. To document their observations, Rose and Lucking wrote incident reports. See Addendum at tabs 10-12.

The informants involved the Molinas in the purchase of cocaine on three occasions, August 26 and 27, and September 4, 1994. In all instances, McClure provided WADEN money for an eighth of an ounce of cocaine, or an "eight ball," id., and McDaniel drove Clifford Molina, in Clifford's car, to Salt Lake City to make a purchase. Upon their return, McClure obtained WADEN's share of the drugs. Plaintiff's alleged involvement, however, varied. WADEN reports state that, in connection with the August 26 buy, plaintiff delivered the cocaine to McClure's home. The next day, he allegedly participated in dividing up the purchased cocaine in his home, discussed its characteristics, and ingested some. Although McClure attempted to give the money for WADEN's share to plaintiff, he insisted that she pay his brother instead. For the final transaction, plaintiff allegedly watched silently while his brother, McClure, and McDaniel exchanged the drugs.

## B.    The arrest and search

On September 6, 1994, Lucking decided to execute a warrant for the arrest of plaintiff and Clifford Molina. Magistrate Fern Spanos, who is married to defendant Spanos, issued the warrant. Lucking gathered teams of officers to serve the warrants, and also conscripted defendant Van Wagoner, a neighbor of the Molinas, to "keep an eye on [the Molinas'] home to let us know if they were indeed there." Addendum, tab 2 (Lucking deposition at 202). When McClure

-5-

learned that the arrest warrants had been issued, she continued to dispute Lucking's conclusion that plaintiff was involved in drug transactions.

That afternoon, the arresting officers knocked, announced their presence, and entered plaintiff's residence, causing considerable damage to the door. They found plaintiff in his upstairs bedroom and Clifford Molina in the shower. After both were handcuffed and taken out to the front yard, Lucking and Rose conducted protective sweeps of the residence.

The officers then turned their attention to plaintiff's property. Lucking directed that plaintiff's car, which was parked on the street, be impounded and held for safekeeping while plaintiff was under arrest. The residence was secured until a warrant to search the residence could be obtained.

Rose signed the affidavit in support of the warrant request. In it, he cited to the transactions of August 26, 27 and September 4, and added that during his protective sweep he saw "a beer can formed into a pipe of the type normally used to smoke 'rock' cocaine or marijuana" and "a white power residue on a glass top covering a night stand." Id. at tab 14. Based on this affidavit, Magistrate Spanos issued a search warrant. The home was searched, and although items which could be considered drug paraphernalia were confiscated, no drugs were found.

-6-

Plaintiff was charged with distribution of a controlled substance, arranging the distribution of a controlled substance, and conspiring to distribute a controlled substance. Clifford Molina was also charged with drug-related offenses.

Plaintiff was released on bail on the evening of his arrest. Defendants Lucking and Rose did not permit him to return to his home. Instead, they took him there to gather clothing and other necessities, then drove him to a local hotel. Although he retrieved his car from the impound lot the next morning, he did not have access to his home. Allegedly with the approval of defendant Spanos, WADEN task force members had arranged to change the locks on the doors, change the utilities, and post a sign stating that the property had been seized by order of the sheriff.

On September 8, the county attorney filed a lis pendens and civil forfeiture complaint under Utah state law, asserting that Molina's real property had been "used to store, distribute and/or manufacture a controlled substance." Id. at tab 16. Later, the attorney determined that the complaint was invalid because the value of drugs in the WADEN transactions did not meet the statutorily-required amount of $1,000. Accordingly, he moved to dismiss the forfeiture action. Possession of the home and its contents was returned to plaintiff on September 26.

The criminal charges against plaintiff remained pending.  During plea bargaining, the county offered to dismiss the charges in return for an agreement that he would not sue and that he would immediately move out of Utah.  Although plaintiff did not accept the agreement, all charges against both plaintiff and his brother were eventually dismissed.  Plaintiff then filed this civil rights lawsuit.

## II.    DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same legal standard the district court used pursuant to Fed. R. Civ. P. 56(c).  See Wolf v. Prudential Ins. Co. , 50 F.3d 793, 796 (10th Cir. 1995).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c).  "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."     Wolf, 50 F.3d at 796 (quotation omitted).  "[W]e can consider only admissible evidence in reviewing an order granting summary judgment."     Gross v. Burgraff Constr. Co. , 53 F.3d 1531, 1541) (10th Cir. 1995).

With regard to plaintiff's civil rights claims, qualified immunity protects public officials from individual liability for damages unless the officials violated

"clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald , 457 U.S. 800, 818 (1982). To pierce this shield, "the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right" and that the rights allegedly violated "were clearly established at the time of the conduct at issue." Albright v. Rodriguez , 51 F.3d 1531, 1534 (10th Cir. 1995).

Applying the above rules to the matter before us, we discuss each of plaintiff's seventeen appellate issues. Because these issues are overlapping, we group them into seven categories.

### A. Rulings on admissibility of evidence, discovery, and deferral of summary judgment under F.R.C.P. 56(f)

As an initial matter, plaintiff asserts that the district court's procedural rulings undermined the presentation of his underlying theory that, in line with their custom of forcing minorities from their community, defendants conspired to make him move out of state because he is Hispanic. The first of these rulings relates to the admissibility of a transcript of a telephone call with informant McClure. The telephone call was initiated on August 14, 1995 by plaintiff's then-attorney. Plaintiff participated in the interview and taped it. According to plaintiff, McClure's statements demonstrate that WADEN's actions were taken to further this conspiracy. Specifically, he asserts that the transcript reveals that

Lucking went forward with the investigation, arrest, search, and seizure despite an awareness that plaintiff was not involved with drugs.     See Appellant's Br. at 7.

At her deposition, taken approximately a year later, McClure maintained that plaintiff was unfairly targeted for a WADEN investigation. She testified, however, that plaintiff had lent her money so that his brother could go to Salt Lake City to pick up cocaine, had dropped a packet of cocaine off at her house, and had used cocaine in her presence four or five times. On cross-examination, she stated that in the transcribed telephone call she was truthful "as far as [she] knew," but did not recall saying that she was "not aware of any instance where [she] had witnessed Ron Molina doing illegal drugs." Appellant's App, Vol. 2 at 887.

Plaintiff submitted the transcript of the telephone call as an exhibit to his memorandum in response to defendants' motion for summary judgment. The district court refused to consider it.

A "nonmoving party need not produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible." Thomas v. IBM , 48 F.3d 478, 485 (10th Cir.1995) (quotations omitted). Rule 56(e) of the Federal Rules of Civil Procedure lists appropriate documents for supporting an opposition to a motion for summary judgment: affidavits made on personal knowledge, depositions, and answers to

interrogatories.  Hearsay testimony, such as "a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill." To successfully oppose a motion for summary judgment, "generalized, unsubstantiated, non-personal" testimony is insufficient.  Id. (quotations omitted).

Unquestionably, McClure's deposition testimony, which severely undercuts the impact of the transcript, is in a form admissible on summary judgment. The unsigned, unauthenticated transcript is not.  Moreover, even if we looked beyond form and evaluated content, we would still conclude that the transcript is inadmissible.  The primary subject of discussion is McClure's recitation of Lucking's testimony and her conclusory evaluation of his motives.

Plaintiff also appeals the district court's determination that it would not consider a newspaper article submitted by plaintiff.  The article constitutes inadmissible hearsay.  The district court's evidentiary rulings were not erroneous.

In a similar vein, plaintiff argues that the district court's unfavorable orders on his discovery motions and request for deferral of a summary judgment ruling under Rule 56(f) were erroneous.  He fails, however, to furnish legal argument demonstrating that the district court abused its discretion in making the questioned rulings.  See Burks v. Oklahoma Publ'g Co.  , 81 F.3d 975, 981 (10th Cir. 1996) (discovery rulings reviewed under abuse of discretion standard); Jensen v. Redevelopment Agency of Sandy City    , 998 F.2d 1550, 1553-54

(10th Cir. 1993) (Rule 56(f) denial reviewed for abuse of discretion). We note that discovery was conducted in this case for more than a year and a half. Notwithstanding plaintiff's generalized claim of a cover-up, he was afforded adequate time and opportunity to unearth the specific facts necessary to oppose summary judgment.

### B.    Legality of 1992 search

As both a separate claim and background support for the conspiracy claim, plaintiff asserts that on November 15, 1992, defendants Rose and Van Wagoner searched his home without a warrant, or with a facially-invalid warrant. The record demonstrates, however, that a warrant was issued and that it authorized a search of the home.    See Appellant's App., Vol. 2 at 808;    see also  id., Vol. 1 at 37 (verified complaint alleging that a search warrant was issued before the search). Summary judgment was the proper disposition of this claim.

### C.    Constitutionality of arrest

Plaintiff makes several assertions of error concerning entry of summary judgment on the claim that the September 6, 1994, arrest violated his constitutional rights. He argues that the arrest warrant was invalid because: (1) there were misstatements and omissions in the affidavit supporting the warrant; (2) the magistrate issuing the warrant was not neutral; and (3) the warrant was not obtained until after the arrest. Two related claims are that he is

entitled to a jury determination on whether there was probable cause to arrest and that his claim for a violation of the "knock and announce" rule.

Plaintiff's first argument implicates the long-established principle that "the Fourth Amendment's warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' if the false statement is necessary to a finding of probable cause." Clanton v. Cooper, 129 F.3d 1147, 1154 (10th Cir. 1997) (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978); see also Kaul v. Stephan, 83 F.3d 1208, 1213 n.4 (10th Cir. 1996) ("A state officer is not automatically shielded from Section 1983 liability merely because a judicial officer approves a warrant.") (citing Malley v. Briggs, 475 U.S. 335, 344-46 (1986)).

For several reasons, however, this principle has no application to the alleged misstatements and omissions at issue here. "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." Taylor v. Meachum, 82 F.3d 1556, 1562 (10th Cir. 1996) (quoting Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996)). "Probable cause need not be based on actual guilt." Breidenbach v. Bolish, 126 F.3d 1288, 1293 (10th Cir. 1997). "While the existence of probable cause is often a jury question, summary judgment is

-13-

appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999). Plaintiff has not raised a jury question on the existence of probable cause for his arrest.

It is unquestioned that the core statements about plaintiff's drug activities were accurate reflections of information supplied by McClure and McDaniel, the confidential informants. These statements were consistent with the officers' own observations during the WADEN investigation. Even if the informants' statements could be proven false, "it is the deliberate falsity or reckless disregard 'of the affiant, not of any nongovernmental informant' that is unconstitutional." Clanton, 129 F.3d at 1154 (quoting Franks, 438 U.S. at 171). In addition, there was no need to include a statement that the two informants were unreliable. All concerns as to the reliability of McClure worked to the favor of plaintiff, not WADEN. Furthermore, unfavorable information on McDaniel's background, later unearthed by plaintiff, was irrelevant to defendants' good faith reliance at the time the affidavit was drafted. [1]

In a related vein, plaintiff argues that Magistrate Spanos, who issued the arrest warrant, was married to the sheriff and thus was not the detached and

---

[1] Other alleged errors, such as discrepancies concerning the amount of money exchanging hands and description of the electronic equipment, are so minor that they do not merit discussion.

-14-

neutral magistrate required by the Fourth Amendment. Plaintiff, however, provides no evidence demonstrating that Magistrate Spanos was unable to make a detached probable cause determination. We decline to formulate a per se rule that an individual in a personal relationship with a law enforcement official cannot be considered a neutral magistrate.

Plaintiff also asserts that the arrest in his home was invalid because no warrant was issued until after he was taken into custody. The evidence in the record belies this assertion. At most, plaintiff's claim is that the first time he saw a warrant, he was already in custody. There is no requirement that an arrestee must be shown the warrant before the arrest or even that the arresting officers have the warrant in hand. See Fed. R. Crim. P. 4(d)(3) ("The officer need not have the warrant at the time of the arrest but upon request shall show the warrant to the defendant as soon as possible.").

Finally, plaintiff alleges that arresting officers announced their presence, then immediately broke down his door, in violation of the "knock and announce" rule. "[I]n some circumstances an officer's unannounced entry into a home might be unreasonable under the Fourth Amendment." Wilson v. Arkansas, 514 U.S. 927, 934 (1995). We have recently explained that,

> [a]lthough certain circumstances may justify entry without knocking
> and announcing, the Fourth Amendment includes a general
> presumption that police officers executing a search warrant for a
> residence must announce their presence and authority before

-15-

> entering. If the occupants do not admit the officers within a reasonable period of time after they have knocked and announced their presence and purpose, the officers may be deemed to be constructively refused admittance, and they may then enter by force.

United States v. Jenkins, 175 F.3d 1208, 1213 (10th Cir. 1999) (citations and quotations omitted).

Wilson was decided in 1995; plaintiff's arrest occurred in 1994. Although it is now established that the "knock and announce" requirement is incorporated into the Fourth Amendment, it was not so clearly established in the law of this circuit in 1994. See United States v. Cervera, No. 93-8062, 1994 WL 123332 (10th Cir. Apr. 12, 1994) (declining to decide whether the Fourth Amendment mandated state officers' compliance with the "knock and announce" requirement of 18 U.S.C. § 3109); United States v. Moland, 996 F.2d 259, 260 (10th Cir. 1993) (same); see also Aponte Matos v. Toledo Davila, 135 F.3d 182, 191 (1st Cir. 1998) ("[T]he requirement that officials identify themselves to the subject of a search or seizure, absent exigent circumstances, was not clearly of constitutional dimension until the Supreme Court decided Wilson in 1995.") (quotation omitted). Thus, any failure to wait a reasonable period after knocking did not violate a clearly-established law in effect at the time, and defendants are entitled to qualified immunity on plaintiff's "knock and announce" theory.

-16-

In short, plaintiff has provided no evidence in support of a legally cognizable civil rights claim concerning events surrounding his arrest. We affirm the grant of summary judgment on his arrest claims.

**D.      Constitutionality of post-arrest searches**

Plaintiff also claims that his constitutional rights were violated when (1) Lucking and Rose conducted five to twenty-minute protective sweeps of his residence while he was handcuffed and standing in his front yard; (2) Lucking obtained a warrant to search his home based on misstatements and material omissions; and (3) WADEN members searched his automobile without a warrant.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." Maryland v. Buie, 494 U.S. 325, 327 (1990). Such a search is limited to a "cursory visual inspection of those places in which a person might be hiding." Id. It is constitutional if the officers had "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." Id. (internal quotations omitted).

Here, plaintiff asserts that the sweeps were unnecessary, because he and his brother were already outside of the home. He also argues that the sweeps

-17-

exceeded the time necessary to dispel a suspicion of danger. We find no merit to these contentions. Other individuals besides plaintiff and his brother could have been present in the home. Additionally, the protective sweeps were not unreasonably long in light of the size of plaintiff's residence.

Concerning the search warrant, plaintiff again asserts that the supporting affidavit contained misstatements and omissions, and that the warrant itself was signed by a non-neutral magistrate. In concluding that the arrest warrant was valid, we have already rejected much of this argument. We also reject his additional attacks on the search warrant, including his objections to the truth of statements that the arresting officers saw, in plain view, drug paraphernalia and a white powder residue on a glass-topped nightstand.

We recognize that plaintiff has raised a disputed issue of fact concerning the validity of these statements. We also note that plaintiff's version of the facts is corroborated by the record, in that no drug residue was found in the home and no white powder taken into evidence. The disputed issue, however, is not a material one.

If an affidavit supporting a warrant contains false statements, " 'the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit.'" Taylor, 82 F.3d at 1562 (quoting Wolford, 78 F.3d at 409). Plaintiff is incorrect in believing that,

"because nothing was found, there could not have been probable cause to search the houses unless that probable cause was based on false information. . . . [P]robable cause to obtain a search warrant is based on a showing of a reasonable degree of suspicion that the suspected items will be found--not an actual showing that such items will be found."   Breidenbach , 126 F.3d at 1293.

The bedrock of this case is that the WADEN investigation culminated in informants' telling the task force that they had participated in drug transactions in plaintiff's home.  Although plaintiff attacks the truth of informants' statements, the record clearly shows that they were made to WADEN team members.  These statements, along with other background information about the investigation, were sufficient to establish probable cause for the search of plaintiff's residence.

The final search issue concerns the inventory search of plaintiff's automobile, made in connection with its impoundment.  "An inventory search is a well-defined exception to the warrant requirement of the Fourth Amendment, designed to effect three purposes:  protection of the owner's property, protection of the police against claims of lost or stolen property, and protection of the police from potential danger."   United States v. Haro-Salcedo   , 107 F.3d 769, 772 (10th Cir. 1997) (citations omitted). To be reasonable under the Fourth Amendment, an inventory search must be conducted according to standardized procedures.   See id.

Plaintiff does not contest defendants' assertion that they had an oral policy relating to the impoundment and inventory search of an arrested subject's property. Instead, he would have us interpret the Haro-Salcedo requirement of a standardized procedure to mean a written policy. We decline to do so. After reviewing the entire record, we agree with the district court that defendants were entitled to summary judgment on issues relating to the searches of plaintiff's property.

E.  **Constitutionality of the seizure of plaintiff's residence and personal property left in the residence**

Plaintiff also asserts that the seizure of his home and its contents was illegal. A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook County, 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). " 'When officers have reason to believe that criminal evidence may be destroyed, or removed, before a warrant can be obtained, the circumstances are considered sufficiently critical to permit officers to enter a private residence in order to secure the evidence while a warrant is sought.'" United States v. Wicks, 995 F.2d 964, 970 (10th Cir. 1993) (quoting United States v. Chavez, 812 F.2d 1295, 1299 (10th Cir. 1987) (further quotation omitted)). However, a "[f]ailure timely to return seized material which is without

-20-

evidentiary value and which is not subject to forfeiture may state a constitutional or statutory claim." Davis v. Gracey, 111 F.3d 1472, 1477 (10th Cir. 1997).

Accordingly, defendants made a satisfactory showing on summary judgment that they did not violate the Fourth Amendment when they kept plaintiff out of his house until they could conduct a lawful search. WADEN task force members, however, interfered with plaintiff's access to his home for an additional three weeks. There are material issues of fact concerning defendants' liability for their exercise of continued possession and control over plaintiff's home.

The fact that a forfeiture action had been filed in state court does not justify the extended seizure of the home. In United States v. James Daniel Good Real Property, 510 U.S. 43, 62 (1993), the Supreme Court held that "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." The Court reasoned that the immobility of real property ordinarily eliminates grounds for dispensing with preseizure proceedings. Id. at 57. Because Good was decided in 1993, it was clearly-established law by the time plaintiff's home was seized.

Defendants have not come forward with any evidence demonstrating exigent circumstances for the precipitous seizure of plaintiff's home. [2] As a result, this claim should have survived summary judgment.

**F.     Cognizability of claims alleging racial conspiracy, failure to train officers, and custom and practice of violating rights of minorities**

Another category of plaintiff's claims relates to a racial conspiracy under 42 U.S.C. § 1985, a failure to train officers in the protection of civil rights, and a custom and practice of violating the constitutional rights of minorities. These speculative and conclusory claims are insufficient to establish a constitutional violation.

**G.     Cognizability of claims under Utah state law**

As a final matter, we review the district court's entry of summary judgment on plaintiff's state law claims of false arrest and false imprisonment, intentional infliction of emotional distress, defamation, conversion, and violation of property rights under the Utah Constitution. We find no error in the district court's determination that these causes of action are barred under Utah's Governmental Immunity Act. See Utah Code Ann. §§ 63-30-1 to -38.

---

[2]     It is immaterial that the county attorney, who is not a defendant in this action, filed the forfeiture action on behalf of the State. Plaintiff has shown that it was the defendants who prohibited plaintiff's access to his home and its contents.

## III. CONCLUSION

We AFFIRM in part, REVERSE in part, and REMAND. The district court's entry of summary judgment on all claims is affirmed except on those related to the extended seizure of his residence. The case is remanded to the district court for further proceedings consistent with this order and judgment. Plaintiff's motions to supplement the record and file reply briefs are granted; his motion to strike or correct brief and appendix of appellees Spanos, Lucking, Van Wagoner and the Wasatch County Sheriff's Department is denied; the motion of appellee Perry Rose to file supplemental appendix is granted and his motion to strike is denied. The mandate shall issue forthwith.

Entered for the Court

Mary Beck Briscoe
Circuit Judge