**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 10 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

---

EDWARD A. BREIDENBACH,
MARY ELLEN BREIDENBACH,
FRANK D. BREIDENBACH,
GERALDINE E. BREIDENBACH,
EDWARD JOHN BREIDENBACH,
SCOTT A. HARMS, GINA L.
BULLOCK, JASON BULLOCK,
CHRISTOPHER HARMS, NICOLE
HARMS, FRANCISCO SERRANO,
STEVEN G. HARMS, JENNIFER
HARMS, and CHAD HARMS,

     Plaintiffs-Appellees,

v.

DON BOLISH, Sheriff of Logan
County, RAY NEVILLE, Deputy
Sheriff with Logan County Sheriff's
Department, COUNTY OF LOGAN, a
county of the State of Colorado, and
JOHN DOES I THROUGH XL,
officers and agents of various
governmental entities including
Colorado National Guard,

    Defendants,

       and

NICOLA GESI, Drug Enforcement
Administration Special Agent, in his
official capacity,

    Defendant-Appellant.

No. 96-1270

Nathan D. Chambers, Chambers, Dansky & Hansen, P.C., Denver, CO, for Plaintiffs-Appellees.

Barbara L. Herwig and Edward Himmelfarb, United States Department of Justice, Washington, D.C., for Defendant-Appellant Nicola Gesi.

---

Before EBEL, HENRY, and BRISCOE, Circuit Judges.

---

HENRY, Circuit Judge.

---

This appeal arises from the plaintiffs' civil rights action against Nicola Gesi, a special agent of the Drug Enforcement Agency, alleging that Agent Gesi knowingly or recklessly submitted false information in an affidavit used to obtain warrants to search the plaintiffs' homes. Agent Gesi moved to dismiss the action on qualified immunity grounds, arguing that the plaintiffs failed to allege facts sufficient to demonstrate that Agent Gesi violated a clearly established constitutional right. The district court denied Agent Gesi's motion to dismiss and allowed discovery to proceed to resolve the qualified immunity question. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). We reverse and remand.

## I. BACKGROUND

The plaintiffs are residents of six homes in Logan County, Colorado. On August 21 and 22, 1993, in a series of pre-dawn raids, federal, state, and local law enforcement agents executed warrants to search the plaintiffs' homes and other homes in Logan County. The searches of the plaintiffs' homes failed to produce any evidence of marijuana or contraband, and none of the plaintiffs were criminally charged.

As a result of the events surrounding the searches, the plaintiffs filed this civil rights action against the law enforcement agents, Logan County, and the City of Sterling, Colorado, alleging the searches violated their Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. Among other things, the plaintiffs brought a federal action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against DEA agent Gesi who submitted the affidavit (or affidavits) to procure the warrants. The plaintiffs allege that Agent Gesi "knowingly included false information in the affidavit(s) or recklessly disregarded the substantial probability that certain information in the affidavit was false." Aplts' App., doc. 1, at 3 (First Amended Complaint dated Feb. 2, 1996).[1] However, because the warrant affidavit was

_____

[1] The full text of the plaintiffs' factual allegations against Agent Gesi state as follows:

> 23. Sometime before August 21, 1993, defendant
> Nicola Gesi submitted affidavit(s) in connection with

3

sealed by the issuing judge as part of the defendants' continuing criminal investigation in Logan County, the plaintiffs have never seen Agent Gesi's warrant affidavit and did not offer specific facts related to the affidavit.

Agent Gesi moved to dismiss the plaintiffs' complaint on qualified immunity grounds. He argued that he was entitled to qualified immunity because the plaintiffs had failed to allege the violation of a clearly established constitutional right in sufficient detail to meet the "heightened pleading" standard required in qualified immunity cases. In response, the plaintiffs offered affidavits from Edward Breidenbach and Mary Ellen Breidenbach swearing that they had never been involved in the cultivation or distribution of any controlled substances, or had controlled substances in their residences or on their property.

The district court denied Agent Gesi's motion. The district court first determined under the qualified immunity doctrine that the law was clearly established at the time of the alleged violation that the submission of false

a request for the issuance of approximately sixty-six (66) search warrants. Defendant Gesi knowingly included false information in the affidavit(s) or recklessly disregarded the substantial probability that certain information in the affidavit(s) was false. In reliance upon this affidavit(s), approximately sixty-six (66) search warrants were issued, including warrants authorizing the entry and search of certain plaintiffs' property, as set forth more fully below.

Aplts' App., doc. 1, at 3 (First Amended Complaint dated Feb. 2, 1996).

4

information in a warrant affidavit violated an individual's Fourth Amendment rights. Aplts' App. doc. 4, at 3 (Dist. Ct. Order dated May 6, 1996). The court then held that because the plaintiffs have been refused all discovery and have not seen the sealed affidavit, their allegations were "sufficient to withstand a motion to dismiss." Id. at 4. The court ruled that the plaintiffs could proceed with discovery limited to resolving the qualified immunity question. The court added that if the plaintiffs failed "to adduce evidence to support their allegations of Gesi's falsity or reckless disregard for the truth in preparing the affidavit at issue, summary judgment [would] enter forthwith." Id.

## II. DISCUSSION

We review the denial or grant of a motion to dismiss de novo, applying the same standard used by the district court. See Liebson v. New Mexico Corrections Dep't, 73 F.3d 274, 275 (10th Cir. 1996). In the context of a qualified immunity defense, however, the standard is somewhat different than in the typical Fed. R. Civ. P. 12(b)(6) context. Once the defendant raises a qualified immunity defense, the plaintiff assumes the burden of showing that the defendant has violated clearly established law. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 645 (1988). To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or constitutional right of

5

which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Pueblo Neighborhood Health Ctrs., Inc., 847 F.2d at 645.

The qualified immunity defense extends to government officials performing discretionary functions. See Harlow, 457 U.S. at 818. As explained by the Supreme Court in Mitchell, qualified immunity represents

> an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

472 U.S. at 526.

The qualified immunity analysis is the same whether the claims are brought under Bivens or pursuant to the post-Civil War Civil Rights Acts. See Butz v. Economou, 438 U.S. 478, 504 (1978) ("[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."). Thus, in assessing whether the qualified immunity defense should apply, we must make two inquiries: First, we must ask what was the clearly established law with regard to the plaintiffs' constitutional rights at the time those rights were allegedly violated by Agent Gesi. If the law was not clearly established at the time, then Agent Gesi is entitled to dismissal of the

6

action because he could not have known that he was violating that right. Second, if the law was clearly established, we must ask whether Agent Gesi's conduct was "objectively reasonable" in light of this clearly established law.

## A. Clearly Established Law

The first question under <u>Harlow</u> is whether the law regarding the submission of false information in a warrant affidavit was clearly established at the time of the alleged violation in August 1993. Neither party disputes that the law was clearly established. As pointed out by the district court, the appropriate standard for determining whether a constitutional violation occurred in this instance is set out in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). This court has previously held that "the law [is] clearly established that an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of [a] . . . warrant, if the false statement were material to the finding of probable cause." <u>Bruning v. Pixler</u>, 949 F.2d 352, 357 (10th Cir. 1991) (citing <u>Franks</u>, 438 U.S. at 155-56). Accordingly, we hold that the law concerning the plaintiffs' claim against Agent Gesi was clearly established at the time of the alleged violation.

## B. The Objective Reasonableness of the Defendant's Actions

7

The dispute in this case focuses on the second prong of the Harlow test — that is, whether the plaintiffs have alleged facts sufficient to demonstrate that defendants' conduct was "objectively unreasonable" in light of clearly established law. On appeal, Agent Gesi argues that the district court erred in denying his motion to dismiss because the plaintiffs failed to allege any facts to support their allegation that he knowingly or recklessly submitted false information in his warrant affidavit. Because this appeal arises on a motion to dismiss, we construe the facts, and reasonable inferences that might be drawn from them, in favor of the plaintiff. See Beard v. City Northglenn, Colo., 24 F.3d 110, 115 (10th Cir. 1994).

Agent Gesi correctly notes that in the context of a qualified immunity defense, this court has traditionally required plaintiffs to meet a heightened pleading standard. See Sawyer v. County of Creek, 908 F.2d 663, 667 (10th Cir. 1990) ("Once a qualified immunity defense has been raised . . . , the plaintiff is held to a heightened standard of pleading."). The purpose of the heightened pleading requirement is rooted in the purpose of the qualified immunity doctrine itself. When the Supreme Court reformulated its qualified immunity test in Harlow to focus on the "objective reasonableness" of an officer's actions as opposed to his or her subjective intent, the Court sought to shield government officials not only from the "substantial costs" of subjecting officials to the risks

8

of trial, but also from "[j]udicial inquiry into subjective motivation," including "broad-ranging discovery and the deposing of numerous persons." 457 U.S. at 816. The Court held that such inquiries "can be peculiarly disruptive of effective government." Id. In keeping with this important concern for shielding government officers from burdensome discovery in cases where subjective intent is at issue, this court and several other circuits have imposed a more stringent pleading requirement where a qualified immunity defense is asserted.[2] See Pueblo Neighborhood Health Ctrs., Inc., 847 F.2d at 646. See also Crawford-El v. Britton, 93 F.3d 813, 816-17 (D.C. Cir. 1996) (en banc), petition for cert. granted, No. 96-827 (June 16, 1997); Branch v. Tunnell, 14 F.3d 449, 452 (9th

---

[2] We disagree with the plaintiffs' argument that the Supreme Court altered this heightened pleading requirement with regard to civil rights actions against individual officers in its decision in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993). In Leatherman, the Court rejected the Fifth Circuit's heightened pleading standard in a section 1983 action alleging municipal liability because it held such a standard was inconsistent with the liberal standard of "notice pleading" required under the Federal Rules of Civil Procedure. In doing so, however, the Court expressly stated that "[w]e . . . have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading standard in cases involving individual government officials." Id. at 166-67. In declining to extend its holding to suits against individual officers, the Court emphasized that, "unlike various government officials, municipalities do not enjoy immunity from suit — either absolute or qualified — under § 1983." Id. at 166. Because the Court declined to rule that its holding applied to individual government officers and we find no reason to do so here, we are compelled under the doctrine of stare decisis to continue to apply our heightened pleading standard in cases concerning individual government officers.

9

Cir. 1994); Gooden v. Howard County, Md., 954 F.2d 960, 969-70 (4th Cir. 1992) (en banc); Elliott v. Thomas, 937 F.2d 338, 344-45 (7th Cir. 1991);Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987).

The heightened pleading standard requires that a plaintiff do more than assert bare allegations of a constitutional violation. As we explained in Sawyer, "[t]he complaint must include 'all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law.'" 908 F.2d at 667 (quoting Dominque, 831 F.2d at 676). If the original complaint is deficient, the plaintiff must amend his or her complaint to include specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of the clearly established law. In the context of a Franks claim alleging the knowing or reckless submission of false information in a warrant affidavit, this court has previously held that if the plaintiff "is able to prove the necessary deliberate falsehood or reckless disregard to impeach a facially valid warrant, the reasonableness inquiry has to be resolved against the defendant since no reasonably competent officer could believe [a search] legal where it was his deliberate reckless deception that led the magistrate to issue the warrant." Beard, 24 F.3d at 115. On the other hand, if the plaintiff fails to allege facts sufficient to demonstrate a Fourth Amendment violation, "there is no need to proceed any

10

further; [and] the case ends in defendant's favor." Id. at 115.

In the present case, the plaintiffs' complaint fails to allege any facts to support their claim that Agent Gesi knowing or recklessly submitted false information in his warrant affidavit. The only statement supporting the plaintiffs' Franks claim reads as follows: "Sometime before August 21, 1993, defendant Nicola Gesi submitted affidavit(s) in connection with a request for the issuance of approximately sixty-six (66) search warrants. Defendant Gesi knowingly included false information in the affidavit(s) or recklessly disregarded the substantial probability that certain information in the affidavit(s) was false." Aplts' App., doc. 1, at 3 (First Amended Complaint dated Feb. 2, 1996). This allegation is a conclusory statement with no foundation in any specific facts arising from the warrant affidavit on which the claim is predicated. While we recognize that the plaintiffs have not had access to the warrant affidavit — which the issuing judge sealed in an unrelated criminal proceeding — we cannot subject a government official to discovery based on a complaint which is supported only by conclusory allegations and speculation of a constitutional violation.

Furthermore, the mere fact that no contraband was discovered during the searches of the plaintiffs' residences has nothing to do with whether or not Agent Gesi knowingly or recklessly submitted false information in submitting his warrant affidavit. The plaintiffs are incorrect that, because nothing was found,

11

there could not have been probable cause to search the houses unless that probable cause was based on false information. Probable cause need not be based on actual guilt. Rather, probable cause to obtain a search warrant is based on a showing of a reasonable degree of suspicion that the suspected items will be found — not an actual showing that such items will be found. See Illinois v. Gates, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Therefore, we decline to consider the plaintiffs' actual innocence as related to the question of whether or not Agent Gesi knowingly or recklessly submitted false information in his warrant affidavit.

In sum, the plaintiffs' complaint fails to offer specific, non-conclusory factual allegations sufficient to allow the district court to determine that those facts, if proved, demonstrate that Agent Gesi violated the plaintiffs' Fourth Amendment rights. Accordingly, we conclude that Agent Gesi's motion to dismiss on qualified immunity grounds must be granted.

Our conclusion, however, does not leave the plaintiffs without recourse. We are sympathetic to the plaintiffs' "Catch-22" situation in which they seek to allege a constitutional violation based on a warrant affidavit but cannot offer any

12

facts related to that affidavit because it has been sealed as a result of the defendants' on-going criminal investigation in Logan County. Not only does this situation make it difficult for the plaintiffs to survive a motion to dismiss — such as that presented in this instance — but it also exposes the plaintiffs' counsel to possible sanctions under Fed. R. Civ. P. 11 for presenting a pleading containing allegations lacking evidentiary support. See Fed. R. Civ. P. 11(b)(3).

In a case such as this, the plaintiffs should pursue every possible avenue to obtain the necessary facts to support their legal claims prior to filing a complaint in federal court. The plaintiffs have not done this. While the plaintiffs assert in their answer brief that they "have been denied every opportunity to review or see [the warrant affidavit]," Aples' Br. at 8, the plaintiffs have never sought an order from the judge who sealed the affidavit to allow an unsealing or limited unsealing of the affidavit for use in preparing their civil complaint. The plaintiffs should have sought to obtain the facts in this manner rather than filing a civil complaint and asking another court to oversee the discovery of documents sealed in a separate criminal matter. In the event that the plaintiffs' efforts to unseal the affidavit were to prove fruitless, the plaintiffs would have recourse by seeking appellate review of that decision in this court. See generally Lawmaster v. United States (In re Search of 1638 E. 2nd Street, Tulsa, Okla.), 993 F.2d 773 (10th Cir. 1993) (involving civil plaintiff's appeal of denial of petition to unseal affidavit

13

used to obtain search warrant).[3]

## III. CONCLUSION

For the foregoing reasons, we reverse the decision of the district court denying Agent Gesi's motion to dismiss. We remand this matter to the district court with instructions to dismiss the plaintiffs' complaint without prejudice and with leave to amend. Such disposition should provide the plaintiffs a reasonable amount of time to obtain the necessary factual allegations, if such exist, to support their Franks claim against Agent Gesi.

---

[3] We noted in Lawmaster that a district court has various options available to it in unsealing all or portions of affidavits or other documents. These include: in camera hearings, findings under seal, and redacted versions of the document. See 993 F.2d at 775-76 & n.3.