**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 29 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RITA PATINO QUINTERO,
also known as Rita Carillo,

      Plaintiff-Appellee,

  and

KANSAS ADVOCACY &
PROTECTIVE SERVICES, INC.,

      Plaintiff,

v.

CONRADO B. ENCARNACION,
M.D.; DARA JOHNSON, M.D.;
MICHAEL P. HORNICEK, M.D.;
BENJAMIN H. ARTILES, M.D.;
ZITA CALDERON, M.D.;
PRAKASH P. REDDY, M.D.;
REMEDIOS C. PRIMERO, M.D.;
BASUVIAH SHANKER, M.D.;
AURORA P. TRABAJO, M.D.;
BAL SHARMA, M.S., M.D.; JEAN
DANIEL POLICARD, M.D.; SYBIL
SHAFI, M.D.; LYDIA P. OBLEADA,
M.D.; GEORGE GETZ; MANI LEE,

      Defendants-Appellants,

  and

GLORIA CHAPMAN, LBSW, TTL;
RITA GONZALES, LBSW;
KATHLEEN SHERLOCK, LMSW;
ADELE DUNN, LBSW; LISA VAN

No. 99-3258
(D.C. No. 96-CV-1205)
(D. Kan.)

HORN, LMSW; MARY
PATTERSON, LBSW; REGIS
LOPATA, PH.D.; REX
ROSENBERG, RMLP; JOHN
MARKINGS; ROCHELLE
CHRONISTER; LAVERNE FISS,

Defendants.

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **EBEL** , and **LUCERO** , Circuit Judges.

---

This lawsuit arose from the involuntary commitment of plaintiff Rita

Quintero to the Larned State Hospital (Larned) from 1983 to 1995, when Kansas

Advocacy and Protective Services, Inc. (KAPS) arranged for Ms. Quintero's

release and return to her home in Mexico.  Plaintiff then sued the Larned

administrators, physicians and others involved in Ms. Quintero's care and

treatment, claiming they violated various federal laws, including 42 U.S.C.

§ 1983, and Kansas state laws.  All defendants moved to dismiss Counts I through

---

*       The case is unanimously ordered submitted without oral argument pursuant
to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

VI of plaintiff's fourth amended complaint under Fed. R. Civ. P. 12(b)(6).[2]

Defendants moved to dismiss on qualified immunity grounds, claiming plaintiff failed to allege sufficient facts to demonstrate that they violated a clearly established constitutional right. The district court adopted the recommendations of the magistrate judge, with one modification, and granted the motions to dismiss filed by the social workers and psychologists, but denied dismissal on qualified immunity grounds to the administrators and physicians. This appeal was brought by the administrators, Getz and Lee, and the physicians, Encarnacion, Johnson, Hornicek, Artiles, Calderon, Reddy, Primero, Shanker, Trabajo, Sharma, Policard, Shafi, and Obleada. We have jurisdiction over this interlocutory appeal from the denial of qualified immunity. See Breidenbach v. Bolish, 126 F.3d 1288, 1290 (10th Cir. 1997). We affirm.

BACKGROUND

In 1983, plaintiff, Rita Quintero was found on the streets of Johnson, Kansas. Because she exhibited signs of mental illness, she was taken into protective custody. At a Kansas state court hearing, Ms. Quintero was determined to be "in need of treatment," and she was involuntarily committed to the Larned State Hospital for evaluation and treatment. She was diagnosed with

---

[2]     Counts VII through XVIII, which raise pendent state law claims, claims of legal malpractice, and claims for injunctive relief are not before us.

schizophrenia, and remained at Larned until 1995, when KAPS advocated for her release.

While Ms. Quintero was at Larned, psychotropic medications were administered to her, which she alleges was against her will. Eventually, she developed tardive dyskinesia, a condition that often results from long-term treatment with psychotropic medication. It is characterized by involuntary movements of the face, shuffling gate and other symptoms.

In 1983, the Mexican Consulate in Salt Lake City informed Larned personnel that Ms. Quintero matched the description of a Tarahumara Indian from Mexico. The information was placed in Ms. Quintero's file but no effort was made to tailor her treatment to her culture or to return her to Mexico.

In 1986, a Kansas state court held a hearing to review the 1983 commitment order. Ms. Quintero was represented by a court-appointed attorney, but she did not appear in person. The state court did not make specific findings, but continued the commitment order until "those who are in the care and control of [Ms. Quintero]" determine that she may "be safely returned to society." Magistrate judge's report and recommendation at 11 (quoting state court order). Larned personnel made periodic reports to the court, but no further judicial hearings were conducted regarding Ms. Quintero's commitment.

Contributing to Ms. Quintero's diagnosis of schizophrenia were her unusual statements, depression, aggression, and behaviors of dressing in layers and refusing to bathe. Ms. Quintero is a citizen of Mexico and a member of the Tarahumara Indian tribe. Members of the Tarahumara tribe dress in layers and rarely bathe. Her primary language is Ramuri. She speaks some Spanish, but no English. During her commitment at Larned, interpreters were not always provided for Ms. Quintero, and at no time was a Ramuri interpreter provided. Plaintiffs contend that much of Ms. Quintero's behavior that was treated with psychotropic drugs resulted from cultural differences, language barriers, the hospital environment, and the side effects of the psychotropic medications, rather than mental illness. After KAPS intervened, Ms. Quintero was released from Larned. She returned to Mexico in September 1995, after twelve years at Larned. Sister Beatriz Zapata was appointed as conservator to represent Ms. Quintero's interests in this action.

DISCUSSION

Standard of Review

"Qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Baptiste v. J.C. Penney Co., 147 F.3d

1252, 1255 (10th Cir. 1998) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Because defendants' qualified immunity defense was raised in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), our review is de novo.  <u>See</u> <u>Breidenbach</u>, 126 F.3d at 1291.  We consider only the fourth amended complaint, construing plaintiff's allegations and any reasonable inferences drawn from them in their favor.  <u>See</u> <u>Dill v. City of Edmond</u>, 155 F.3d 1193, 1203 (10th Cir. 1998).  Because qualified immunity is asserted, however, the standard is somewhat different than in the typical Rule 12(b)(6) case.  <u>See</u> <u>Breidenbach</u>, 126 F.3d at 1291.  That is, "we apply a heightened pleading standard, requiring the [fourth amended] complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.'"  <u>Dill</u>, 155 F.3d at 1204 (quoting <u>Breidenbach</u>, 126 F.3d at 1293).  In addition, because Getz and Lee were supervisors, to state a claim against them under § 1983, plaintiff must "establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'  A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance."  <u>Jenkins v. Wood</u>, 81 F.3d 988, 994-95 (10th Cir. 1996) (quoting <u>Woodward v. City of Worland</u>, 977 F.2d 1392, 1399 (10th Cir. 1992)).

-6-

## Count I – Wrongful Confinement – Superintendents Only

The district court declined to dismiss Count I against the superintendent-defendants. Count I alleged that they violated Ms. Quintero's constitutional liberty interest by failing to release her. The superintendents do not challenge the holding that "it [is] unconstitutional for a State to continue to confine a harmless, mentally ill person." Foucha v. Louisiana, 504 U.S. 71, 77 (1992). Rather, they claim they cannot be held personally responsible because they were entitled to rely on the recommendations of the treating physicians, none of whom recommended that Ms. Quintero be released.

Kan. Stat. Ann. § 59-2924(c) and (d) (repealed 1996) provided that the "head of the treatment facility," here Getz and then Lee, was authorized to release Ms. Quintero when she was (1) "no longer in need of treatment at the facility" or (2) "not likely to cause harm to self or others." The superintendents do not claim that Ms. Quintero was a danger to herself or others. They were free to consult with Ms. Quintero's treating physicians regarding her status and condition, but the statute clearly contemplated that the responsibility would fall on the superintendents, not their employees. Accordingly, the district court correctly denied dismissal of this count against the superintendents because the right to be released was clearly established and the fourth amended complaint alleges that Ms. Quintero was not a danger to herself or others and that she was entitled to be

released.  See Foucha, 504 U.S. at 77-78 (government may confine mentally ill person to mental institution until he regains sanity or is not danger to himself or others).

Count III – Failure to Provide Adequate Safety, Treatment and Training – Superintendents and Physicians

The district court placed plaintiff's claims in Count III in two categories: (1) inadequate medical care and (2) inadequate treatment and training.  It declined to dismiss category (1) of Count III against the superintendents and the physicians, but it limited the claim to the administration of psychotropic medications.  Category (2) was dismissed as to the superintendents, but not as to the physicians.  The district court adopted the magistrate judge's characterization of plaintiff's claims as alleging a violation of substantive due process under the Fourteenth Amendment, which ensures safe conditions of confinement, including food, shelter, clothing and medical care, as well as "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." Youngberg v. Romeo, 457 U.S. 307, 315, 319 (1982).

Category(1):  Inadequate Medical Care - Superintendents and Physicians

Plaintiff asserts that defendants violated Ms. Quintero's constitutional right to be free from the unwanted administration of psychotropic medications.  They maintain that she had the right to be informed, in a language she could

understand, of the nature of the medications and their side effects. Defendants claim that Ms. Quintero did not allege that she objected to the medications. Even if Ms. Quintero did not object explicitly to taking the psychotropic medications, it does not necessarily follow that she took them voluntarily. If she did not know anything about them, or if the effects of the medications were to blunt her ability to refuse them, cf. Riggins v. Nevada, 504 U.S. 127, 137 (1992) (side effects of psychotropic medication may impair ability to follow trial testimony or communicate with counsel), her acquiescence cannot be characterized as the voluntary ingestion of psychotropic medications. Moreover, Ms. Quintero's argument that she took the medications because she feared she would be denied canteen tokens if she refused cannot be resolved on a motion to dismiss filed under Rule 12(b)(6).

We need not examine the contours of a claimed constitutional right to be informed about psychotropic medications because a Kansas state statute provided a liberty interest entitled to the protection of the federal Due Process Clause. "[A] state may confer more comprehensive due process protections upon its citizens than does the federal government. . . . 'Because state-created liberty interests are entitled to the protection of the federal Due Process Clause, the full scope of a patient's due process rights may depend in part on the substantive liberty interests created by a state as well as federal law.'" Jurasek v. Utah State

Hosp., 158 F.3d 506, 514-15 (10th Cir. 1998) (quoting Mills v. Rogers, 457 U.S. 291, 300 (1982)).

Kan. Stat. Ann. § 59-2929(a)(7) (repealed 1996), stated that a patient in a treatment facility "shall" have the right "to have explained, the nature of all medications prescribed, the reason for the prescription and the most common side effects and, if requested, the nature of any other treatments ordered." We reject any claim that these requirements could be fulfilled by conducting the explanation in a language the patient could not understand.

Section 59-2929(a)(7) used "explicitly mandatory language in connection with requiring specific substantive predicates." Hewitt v. Helms, 459 U.S. 460, 472 (1983). Therefore, violation of the rights granted can be redressed in federal court. See id. (State's use of "explicitly mandatory language . . . created a protected liberty interest"). Moreover, this law was clearly established, and defendants reasonably would have known that this law governed their conduct. Cf. Chapman v. Nichols, 989 F.2d 393, 397 (10th Cir. 1993) ("[a] reasonably competent public official should know the law governing his conduct") (quotation omitted).

The fourth amended complaint alleges that the physicians failed to explain to Ms. Quintero the nature and effects of the psychotropic medications that were administered to her, and failed to exercise professional judgment in their

-10-

decisions to administer those medications. It further alleges that the superintendents failed to implement policies, procedures, and staff training to ensure that Ms. Quintero's rights were protected by having her medications explained to her and by ensuring that independent medical judgment was exercised. Accordingly, we hold that plaintiffs have alleged sufficient facts to withstand dismissal of this claim.

Category (2): Inadequate Treatment and Training – Physicians Only

On appeal, plaintiff argues only that defendants violated her constitutional right to adequate medical care, as discussed above. Accordingly, she has expressly conceded the issue of a right to habilitation in this context. Count III, as it relates to a habilitation claim is, therefore, dismissed.

Count IV – Improper Administration of Psychotropic Medication – Superintendents and Physicians

In Count IV, plaintiff alleged that the superintendents and physicians violated Ms. Quintero's liberty interests to be free from the unwanted administration of psychotropic drugs. "It is well established that an individual has a liberty interest in 'avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.'" Jurasek, 158 F.3d at 510 (quoting Washington v. Harper, 494 U.S. 210, 221-22 (1990)); accord Bee v. Greaves, 910 F.2d 686, 688 & n.3 (10th Cir. 1990) (Bee II); Bee v.

Greaves, 744 F.2d 1387, 1393 (10th Cir. 1984) (Bee I). The physicians and superintendents do not dispute plaintiff's claim that Ms. Quintero had a right to avoid the unwanted administration of psychotropic medications or that the right was clearly established at the time she was admitted to Larned. They argue, however, that plaintiff has failed to allege facts to establish that they violated Ms. Quintero's rights.

The fourth amended complaint alleged that Ms. Quintero (1) had never been adjudicated unable to participate in decisions regarding her medications, (2) she had never been adjudicated or perceived by defendants as a danger to herself or others, (3) the nature and effects of the psychotropic medications were never explained to her, (4) psychotropic medications were administered against her will, and (5) defendants failed to exercise professional judgment in the decisions to administer psychotropic medications. These allegations state a claim. We recognize that the inquiry does not end with the allegation that Ms. Quintero's liberty interest was abridged because that interest must be "balanced against competing state interests to determine whether it is outweighed by 'the demands of an organized society.'" Bee I, 744 F.2d at 1394 (quoting Romeo, 457 U.S. at 320 (further quotation omitted)). But the balancing is not before us in this review of the district court's ruling on defendants' motion to dismiss. Thus, we leave it to the district court to proceed to the next step.

## CONCLUSION

The right-to-habilitation claims in Count III are DISMISSED as to the physician-defendants. The judgment is otherwise AFFIRMED.

Entered for the Court


Carlos F. Lucero
Circuit Judge