**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 12 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

KAMAL K. PATEL,

      Plaintiff-Appellant,

v.

TOM L. WOOTEN, Ex-Warden,
FCI Florence; LOU ROCKVAM,
Food Service Administrator; JENNY
ROPER, Ex-Food Service
Administrator; WENDELL BELL,
Assistant Food Service Administrator,

      Defendants-Appellees.

No. 00-1187
(D.C. No. 96-M-286)
(D. Colo)

ORDER AND JUDGMENT *

Before **EBEL** , **PORFILIO** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Plaintiff Kamal K. Patel, a federal prisoner appearing pro se, appeals from the district court's grant of summary judgment to defendants in his action brought pursuant to  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics    , 403 U.S. 388 (1971).  We have jurisdiction under 28 U.S.C. § 1291.

At this juncture, plaintiff's remaining claim is for damages against defendants based on his assertion that they violated his Fifth Amendment right to the equal protection of the law while he was housed at the Federal Correctional Institution, Florence, Colorado ("FCI-Florence").     See Patel v. United States  , No. 97-1083, 1997 WL 764570 (10th Cir. Dec. 4, 1997).    [1]  Plaintiff was housed at FCI-Florence from March 25, 1993 until January 26, 1997.  He is a Hindu and therefore does not eat meat.  He alleges that defendants failed to provide him with an appropriate substitute for meat on either of FCI-Florence's two meal plans, even though defendants always provided Jewish and Muslim inmates with a substitute for pork, which Jews and Muslims do not eat.

The district court decided that plaintiff was not treated differently than other inmates because no inmate, whatever his religious faith, was allowed to

---

[1]     Plaintiff's First Amendment claim, his only other claim to survive his first appeal, was dismissed by stipulation.     See R. Vol. I, docs. 91, 92.

choose the protein source in his meal. R. doc. 130, at 12. The district court therefore concluded that plaintiff had failed to establish a constitutional claim. Id. The district court also held in the alternative that defendants were following Bureau of Prisons (BOP) policy related to inmate meals and, as a result, were entitled to qualified immunity on plaintiff's claim. Id.

Plaintiff argues on appeal that: (1) BOP regulations do not shield defendants because defendants failed to accommodate his religious dietary restrictions while accommodating the dietary needs of inmates of other faiths, even after they knew that he was a Hindu and did not eat meat; and (2) regulations governing the BOP's "common fare" religious meal plan allowed defendants to replace a meat item with a vegetarian item from the shelf, but they refused to exercise this option.

We review the grant of summary judgment de novo. Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 465 n.10 (1992). Summary judgment is appropriate if there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). To withstand summary judgment, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Rule 56(e) (emphasis added)). The evidence is

considered in the light most favorable to the non-moving party. Behrens v. Pelletier, 516 U.S. 299, 309 (1996). When defendants base a motion for summary judgment on the defense of qualified immunity, the plaintiff must show that defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." Washington v. Davis, 426 U.S. 229, 239 (1976). The challenged disparate treatment must be the result of purposeful discrimination. Harris v. McRae, 448 U.S. 297, 323 n.26 (1980). [2] Because plaintiff is a prisoner, however, our analysis of his equal protection claim

---

[2] This circuit has previously required a plaintiff to meet a heightened pleading standard when subjective intent was an element of the substantive claim and the defendant raised a qualified immunity defense. See, e.g., Breidenbach v. Bolish, 126 F.3d 1288, 1292 (10th Cir. 1997) (reviewing denial of motion to dismiss); Gehl Group v. Koby, 63 F.3d 1528, 1535 (10th Cir. 1995) (reviewing grant of summary judgment). We recently held, reviewing a dismissal under Fed. R. Civ. P. 12(b)(6), that our heightened pleading requirement does not survive the Supreme Court's opinion in Crawford-El v. Britton, 523 U.S. 574 (1998). Currier v. Doran, 242 F.3d 905, 916 (10th Cir. 2001). Even though we were reviewing a dismissal in Currier, we noted that Crawford-El decided that the D.C. Circuit's heightened pleading requirement at the summary judgment stage was improper. Currier, 242 F.3d at 913-14, 916. Thus, there is no question that our heightened pleading requirement at the summary judgment stage was also overturned by Crawford-El.

-4-

is guided by the Supreme Court's decision in Turner v. Safley, 482 U.S. 78 (1987). Washington v. Harper, 494 U.S. 210, 223-24 (1990) ("We made quite clear that the standard of review we adopted in Turner applies to all circumstances in which the needs of prison administration implicate constitutional rights."). In Turner, the Supreme Court adopted a lower standard of scrutiny in evaluating the constitutionality of prison rules and regulations, in order to balance prisoners' constitutional rights with the deference due officials delegated the responsibility of administering prisons. Id. at 84-85. The Court decided that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. Four factors are relevant to determining the validity of a prison regulation that infringes a prisoner's constitutional right: (1) whether a valid and rational connection exists between the regulation and a legitimate governmental interest advanced as a justification; (2) whether, notwithstanding the regulation, alternative means exist for the prisoner to exercise the right; (3) what effect an accommodation of the prisoner's constitutional right would have on guards, inmates and prison resources; and (4) whether an alternative is available which would accommodate the prisoner's rights at a de minimis cost to valid penological interests. Id. at 89-91. Because the district court found that plaintiff had not

made a prima facie showing of a constitutional violation, it did not consider these factors.

We hold that plaintiff made a sufficient threshold showing of an equal protection violation and the case must be remanded for the district court to do the Turner analysis. To briefly summarize the evidence more fully presented in his district court brief: pork was always accompanied by a protein substitute on the main cafeteria line. R. Vol. III, Doc. 106, Ex. A at 25, Ex. F at 54, Ex. G. This was done not as a matter of regulation, but as a matter of discretion. Id., Ex. A at 25. The practice originated because it would accommodate Jewish and Muslim inmates, who did not eat pork for religious reasons, although other inmates would also choose an alternative to pork. Id., Ex. C at 15-16. Pork was never served on the "common fare" religious diet, and meat was frequently the only entree. See id., Ex. D, Att. A. The common fare plan ostensibly serves the dietary needs of all faiths, but specifically mentions only issues of concern to Jews and Muslims. Id., Ex. D. Protein substitutes such as beans, cheese, and peanut butter were not regularly available on the salad bar. Id., Ex. B, ¶ 3. Such protein substitutes were regularly stocked in the kitchen and were readily available, however. Id., Ex. C at 18-19. The common fare regulations specifically allowed hot entrees on that meal plan to be replaced with "shelf stabilized meals from the commissary." Id., Ex. D, Att. A at 1-7. Plaintiff told defendants that he desired

a substitute for meat due to his religious beliefs.    Id., Ex. H.  In response, defendants told him to choose the common fare plan or to pick and choose between the main line and the salad bar if he did not wish to eat a meat entree. Id.

Defendants argue that they did not serve a substitute for pork to accommodate the religious needs of Jewish and Muslim inmates, and plaintiff therefore cannot show that they discriminated against him.  This argument is without merit.  By defendants' admission, they intended to accommodate Jewish and Muslim inmates' dietary restrictions on the common fare plan.    Id., Ex. D. Plaintiff presented evidence that defendants began a practice of providing a meat substitute for pork on the main cafeteria line to accommodate Jewish inmates. Id., Ex. C at 15-16.  Moreover, whatever the reason that defendants provided a meat substitute for pork on the main cafeteria line, the effect of that practice was to accommodate the religious dietary needs of Jewish and Muslin inmates. Plaintiff's evidence therefore creates a genuine issue of fact as to whether defendants intentionally discriminated against him after he pointed out that the meat they provided as a substitute for pork on both plans did not satisfy the requirement of his Hindu faith to avoid meat as well as pork.  A fair inference can be drawn that defendants deliberately treated plaintiff differently than Jewish and Muslim inmates.

Defendants also argue that the alleged disparate treatment between plaintiff and other inmates was justified because they were following BOP policy. [3] This argument ignores that defendants' conduct is not judged by whether it comported with BOP policy, but by whether this conduct comported with the Constitution. See Turner, 482 U.S. at 84-85. We decline to decide in the first instance whether the BOP meal regulations are valid under Turner.

Defendants maintain that plaintiff did not raise in the district court his argument that the common fare regulations allowed them to substitute a shelf item for the planned entree. Contrary to defendants' assertion, plaintiff advanced this argument in his response to their motion for summary judgment. See, e.g., R. Vol. III, Doc. 106, at 2, 5, 16, Ex. B, at 2 ¶ 7, Ex. D, Att. 1, at 1-7.

In sum, because plaintiff made a prima facie showing of an equal protection claim, we REVERSE the district court's grant of summary judgment to defendants, and REMAND for the district court to appoint counsel for plaintiff

---

[3]     Plaintiff moves to supplement the record with evidence that FCI-El Reno, Oklahoma, provides a no-flesh alternative to meat. Plaintiff offers this evidence ostensibly to prove that BOP policy did not prevent defendants from accommodating his requests for such a substitution at FCI-Florence. Because this evidence was created several years after the events plaintiff complains of at FCI-Florence, and because it was not presented to the district court, we decline to consider it now. Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1458 n.13 (10th Cir. 1997).

and to conduct further proceedings consistent with this order and judgment. [4]

Plaintiff's motion to supplement the record with newly discovered evidence is denied.

Entered for the Court


David M. Ebel
Circuit Judge

---

[4]     Defendants on appeal do not assert the defense of qualified immunity, so we decline to address it.

00-1187, *Patel v. Wooten*

**PORFILIO**, Senior Circuit Judge, dissent.

I dissent for two reasons. First, I believe the court has lost sight of the nature of this case. In an attempt to ferret out the constitutionality of the menu policies of the Bureau of Prisons, this disposition ignores, I believe, the absence from this case of either the Bureau of Prisons or any official responsible for those policies. Second, because this action is merely one for damages in which the liability of four individuals employed at FCI-Florence is the only issue, the disposition fails to take their immunity into account.

Because the BOP was dismissed from this case, I believe the constitutionality of its regulations is not a question before us. In my opinion, therefore, the *Turner* inquiry ordered here is inapposite. This case is simply about the action of four discrete individuals and their individual liability, not the regulations and policy of the BOP.

Moreover, a finding that the BOP policy in question is in violation of the Constitution could not resolve this case. Because the case is postured only as a claim of damages from the named defendants, their immunity would foreclose judgment for the plaintiff. Oddly enough, a finding that the menu policy is constitutionally supportable would not be dispositive either. There would remain

-10-

unresolved the plaintiff's claim the defendants are liable because they refused to take what he contends are discretionary actions allowed under the BOP policy.

Finally, I submit we have no indication in the record that the policy in issue is viable. Indeed, having long ago been transferred from FCI-Florence, Mr. Patel has submitted to us information purporting to show he was able to obtain an acceptable menu from another federal penal institution. Thus, I seriously question whether the constitutional issue is not moot. I am concerned also that the remand would result in a needless waste of precious judicial resources.

Further, I agree with the district court that the defendants are at least qualifiedly immune from suit in this case. *Saucier v. Katz*, ___ U.S. ___, 121 S. Ct. 2151, 2156 (2001) reminds us unless it would be clear to a reasonable official in the circumstances of the case that his actions were unlawful, immunity should be granted. The Court emphasized this result obtains even if the official's actions could be considered unconstitutional, 121 S. Ct. at 2158. In this case, the district court properly noted the defendants were "following orders" by enforcing the policy they believed required by the BOP.

Thus, the immunity paradigm requires that we ask, "Was it clear at the time the defendants acted that what they did violated the law?" Because this court itself is not presently prepared to answer that question, I find it difficult to fathom how the defendants could be held to a higher standard of knowledge.